Turner, J.
 

 In the
 
 Piper case
 
 there was a sales tax assessment against appellant in the sum of $62.35, including penalty, and a use tax assessment in the sum of $10.83, making a total assessment against appellant, including penalty, of $73.18.
 

 In the
 
 Fruth case
 
 there was a sales tax assessment in the sum of $37.62, including penalty, and a use tax assessment in the sum of $1.56, including penalty, making a total assessment of $39.18. In both cases the purchased articles were used in preparing and storing meats belonging to others.
 

 Both appellants are engaged .in cold storage of food in individual lockers business. (Section 1155-20, General Code.) In both cases it is claimed by appellants
 
 *110
 
 that they are respectively engaged in processing for sale and, therefore, the sales and use upon which the taxes have been assessed are excepted under Sections 5546-1 and 5546-2, General Code, as to sales, and Sections 5546-25 and 5546-26, General Code, as to use, for the reason that such articles upon the sale or use of which taxes were levied, are used or consumed directly in the production of tangible personal property
 
 for sale.
 

 Section 5546-2, General Cqde, levies a tax on each retail sale made in the state. Section 5546-1, General Code, defines “retail sale” as follows:
 

 “ ‘Retail sale’ and ‘sales at retail’ include all sales excepting those in which the purpose of the consumer is * * * to use or consume the thing transferred directly in the production of tangible personal property for sale by * * * processing * *
 

 Section 5546-26, General Code, levies a tax on the use and consumption of property in the state. .Section 5546-25, General Code, in language similar to the definition of “retail sale” in Section 5546-1, General Code, defines “use” as follows:
 

 “ ‘Use’ means and includes the exercise of any right or power incidental to the ownership of the thing- used, excepting as hereinafter provided.
 

 “When the purpose of the consumer is * * * to use or consume the thing transferred directly in the production of tangible personal property for sale by * * * processing- * * *.” ■
 

 That appellants do process for the owners of the food which is to be stored is clear, but the record shows just as clearly that appellants are not engaged in processing-
 
 for sale.
 
 The evidence shows in each case that before any processing is done the meat belongs to the customer. The following- question and answer is typical of the business of both appellants:
 

 “Q. Tell the board, please, whether or not you sell any ,of this meat that you process. A. No, we don’t
 
 *111
 
 sell any of the meat that we process. That is, we don’t retail any meats, except sometimes we do sell quarters of beef to our locker patrons, or a side of pork or a half of pork.
 

 “Q. * * * that is before any work has been done on it, before any processing has taken place. A. Yes, we sell it before any processing has taken place.”
 

 The processing consists of chilling the meat, cutting it up, freezing it, and storing it in lockers rented by patrons. The meat belongs to the renters of the lockers during all the time that the processing is done. The profit comes from charges made for preparing and storing in individual lockers the meat belonging to the customers to be put in their respective lockers.
 

 As to sales, appellant Piper testified:
 

 “Q. Tell whether or not that is before any work has been done on it, before any processing has taken place. A. Yes, we sell it before any pro'cessing has taken place.
 

 “Q. And then you make a charge on the processing? A. On the processing; that is right.”
 

 As stated by the Board of Tax Appeals in its journal entry in the
 
 Fruth case:
 

 “In both cases the locker patrons had title to the food before any processing was done thereon by the appellants and retained title at the time of delivery to them.”
 

 Appellant Piper was asked and answered as follows:
 

 “Q. How do you make your money, Mr. Piper; by charging locker rental and so much per pound for cutting it, meat processing and rendering lard, is that correct? A. That is right.”-
 

 Appellant Prnth was asked and answered:
 

 “Tell the honorable judge, please, how you are paid for this work, this processing work; in other words, tell the court what your charges are. A. Our charges on beef is two cents, the same as that applies to vegetables, fruit, and our charges on pork is two and a
 
 *112
 
 half. That, of course, includes the cutting, the chilling of this meat, the wrapping, the freezing, the storing it in these lockers; that is all included in the processing charge. The rental charge, of course, is separate. * # -* ? J
 

 In the
 
 Fribth case
 
 a nearby slaughterhouse was owned but none of the articles in respect of which the sales or use tax was assessed was used in the slaughterhouse business.
 

 Being of the opinion that none of the articles in respect of which the sales or use tax was assessed was to be used or consumed in processing any other article
 
 for sale,
 
 we are of the opinion that the respective decisions of the Board of Tax Appeals are reasonable and lawful and should be and hereby are affirmed.
 

 Decisions affirmed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Sohngen and Stewart, JJ., concur.