Zimmerman, J.
 

 The Board of Tax Appeals affirmed two orders of the Tax Commissioner confirming assessments for sales and use taxes determined to be due from' the appellant, Merchants Cold Storage Company, upon certain purchases made by it. These purchases consisted principally of (1) coal used to produce steam and electricity and (2) equipment and supplies used in the production of refrigeration and in the manufacture of ice.
 

 Appellant, upon this appeal, insists that the de
 
 *525
 
 cisión of the board is unreasonable and unlawful because the articles in controversy represent items used directly in the production of tangible personal property for sale by processing and the purchases of such items are not, under the exceptions contained in Sections 5546-1 and 5546-25, General Code, subject to taxation.
 

 The record discloses that the appellant corporation is located in the city of Cincinnati and is engaged primarily in the cold storage business and incidentally in the manufacture of ice. Adjacent to its premises are located those of two other corporations, Tri-State Butter Company, devoted to the manufacture and sale of butter, and the Consolidated Products Corporation which processes buttermilk into swine and poultry feed and sells it to dealers. All these corporations are wholly owned subsidiaries of the National Dairy Products Corporation.
 

 It is agreed that $1,481.99 of the total amount involved in the present appeal covers the tax and penalty assessed upon purchases of coal. The coal so purchased was burned in appellant’s boilers to produce steam which was used for several purposes and passed through three different outlets. The steam from one outlet went through the electric generating machinery in appellant’s plant and then to the Tri-State Butter-Company for use by it; steam from another outlet passed through ice refrigerating machines operated by appellant and then to Tri-State; and steam from the third outlet passed directly to Tri-State and the Consolidated Products Corporation. The steam was employed by the outside recipients for various purposes,, such as cleansing cans and containers, operating a pump, pasteurizing cream and extracting moisture from buttermilk.
 

 The record shows that Tri-State and Consolidated were charged and paid something for the steam and'
 
 *526
 
 electric current they got from appellant, but what those amounts were is indefinite. One of appellant’s witnesses denoted the charge made for steam as “a token charge,” and the Board of Tax Appeals found that such amounts, whatever they were, were not com-. mensúrate with the costs of production.
 

 Appellant contended before the board and contends here that the coal purchased was used directly in the manufacture of the products turned out by Tri-State and Consolidated and the purchase thereof was, therefore, excepted from taxation. However, the board determined, and correctly so we believe, that the butter and stock feed which were sold were produced entirely by Tri-State and Consolidated, and that appellant, in the furnishing of steam, actually produced no property for sale and was not entitled to the exception claimed on that ground.
 

 It is unquestionably true that at least the purchase of a part of the coal used by appellant in the generation of steam and electricity for employment in its own business was excepted from taxation, but appellant failed to adduce tangible evidence as to what portions of the coal purchased were devoted to such purposes. Therefore, applying the decision of this court in the case of
 
 Obert
 
 v.
 
 Evatt, Tax Commr.,
 
 144 Ohio St., 492, 59 N. E. (2d), 931, and Section 5546-2, G-eneral Code, the board took the view that appellant was not in a position successfully to escape payment of the assessments imposed.
 

 The board experienced a similar difficulty with respect to the equipment and supplies purchased by appellant for use in its refrigeration business and in the manufacture of ice. Appellant operates a large establishment consisting of some seven or eight floors divided into cold storage rooms or compartments. The customers who made use of the refrigeration facilities were mostly wholesalers and placed in the stor
 
 *527
 
 age compartments for future disposal such things as meat, fish, vegetables, fruits, eggs and egg products, milk and milk products and other perishable foods. Under the principles announced in the case of
 
 Piper
 
 v.
 
 Glander, Tax Commr.,
 
 149 Ohio St., 109, 77 N. E. (2d), 714, the appellant, as concerns its cold storage business, is a processor furnishing services, and the equipment and supplies purchased by it for the conduct of such business were not being used in the processing of any other articles for sale in a manner which would entitle it to have the exception claimed.
 

 Of course, the purchase of equipment and supplies for the exclusive purpose of manufacturing ice for sale would be excepted from taxation, but, no clear separation of the items so used from those used in the cold storage business being determinable from the evidence offered, the board was placed in somewhat the same predicament in which it found itself with respect to the coal purchases.
 

 As we look at this matter, the principal trouble here is that appellant was unable or failed to introduce evidence by which taxable and nontaxable purchases could be separated in any sure or satisfactory manner. An attempted classification based on the evidence furnished would be arbitrary and speculative and the burden rested on the appellant to show excepted purchases. Upon the record presented we cannot fairly say that the decision appealed from is unreasonable or unlawful, and it is, therefore, affirmed.
 

 Decision affirmed.
 

 Weygandt, C. J., Turner, Matthias and Sohngen, JJ., concur.
 

 Hart and Stewart, JJ., concur in the syllabus but dissent from the judgment.