RICHARDSON-MERRELL, INC., THE WILLIAM S. MERRELL CO. DIV., APPELLEE, v. PORTERFIELD, TAX COMMR., APPELLANT.

[Cite as Richardson-Merrell v. Porterfield (1972), 32 Ohio St. 2d 281.]

(No. 72-235—Decided December 15, 1972.)

282

*Messrs. Dargusch & Day, Mr. Carlton S. Dargusch, Jr., Mr. Roger F. Day* and *Mr. William Harrison,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. Dwight C. Pettay, Jr.,* for appellant.

BROWN, J. The issue in this case is the proper sales and use tax treatment of raw materials and related packaging items purchased for use in the manufacture of products for sale, which products are also partially used for other nonexempt purposes.

The Tax Commissioner contends that the assessment should be levied on a calculated portion of Merrell's purchases of raw materials and related packaging items which were used to manufacture drug products. The commissioner reasoned that, because Merrell distributed approximately 8 percent of its drug products as sample products, without charge, the computed cost of an equal portion of its original material purchases are taxable because that portion was not incorporated into products produced for sale.

To resolve the controversy, we direct our attention to R. C. 5739.01(E) which, in pertinent part, provides for tax exemption of material purchases when the *purpose* of the consumer or purchaser is "to incorporate the thing transferred as a material or part, into tangible personal property to be produced for sale by manufacturing * * *."

This court, in construing R. C. 5739.01, has enunciated the "principal and primary use test" in order to determine how the exception should be applied to purchases of equipment which are used *both* for exempt manufacturing purposes and for other nonexempt purposes.

This test was announced in *Mead Corp.* v. *Glander* (1950), 153 Ohio St. 539.

In that case, Mead was using certain equipment part of the time to manufacture products for sale, and was using the same equipment the remainder of the time for other purposes. It was held that the equipment was *primarily* used in an exempt manner, and therefore its purchase was not subject to sales and use taxes. In support of this conclusion, we stated as follows, at page 543:

"Where equipment is employed primarily in a way which excepts its purchase from the sales and use tax, its incidental use otherwise will not destroy such excepted status.

"The general rule is that 'it is the primary, as distinguished from an incidental, use of the property that determines the question whether it is exempt from taxation.'"

It is clear, therefore, that the applicable test here is the "principal and primary" use test. Concern is given

also to the fact that, in the instant case, we are involved with fungible goods.

Although the "principal and primary" use test has most often been applied to purchases of machinery and equipment, this test has also been employed to determine the taxable status of *fungible supplies*. A case in point is *Weigand, Inc.*, v. *Bowers* (1960), 171 Ohio St. 78, where the taxpayer claimed, *inter alia*, sales- and use-tax exceptions for purchases of repair parts, tires, batteries and other necessary items used in furnishing motor-carrier services. We held against the taxpayer in *Weigand* because the items involved were *predominantly* used in a nonexempt fashion (contract-carrier service as opposed to common-carrier service). Nevertheless, it was made quite clear that the tax status of fungible supplies of this type is to be determined by the "principal and primary" use test. In the *per curiam* decision, we stated:

"The primary use to which the purchased property is put is determinative. An *incidental* use otherwise will not destroy the status." (Emphasis added.)

Even more recently, this court has applied the "principal and primary" concept to purchases of fungible supplies as well as to machinery. *Ace Steel Baling* v. *Porterfield* (1969), 19 Ohio St. 2d 137, wherein we described the issue presented, as follows:

"The issue before the Board of Tax Appeals was whether the primary use of appellant taxpayer's self-propelled railway crane in its steel scrap plant was in the processing phase of that operation. * * * If it was, admittedly, the one crane purchased in the taxable years in question would be exempt from the Ohio sales and use tax, *as would be the supplies necessary to maintain and fuel three other such cranes*." (Emphasis added.)

In holding in favor of *Ace Steel Baling*, we pointed out that "primacy in utility or essentiality" was the predominant consideration in applying the "primary use" test, stating, on page 140:

"* * * This court did not elaborate upon the term 'primary use' which was the basis of this court's decision in the

*Mead case, supra* (153 Ohio St. 439). Necessarily we are here and now moved to say that 'primary use' is not merely the quotient of the time that a device is utilized in a taxable, *vis-a-vis* a nontaxable, activity. *'Primary use' connotes primacy in utility or essentiality, in quality as well as quantity.''* (Emphasis added.)

It is quite obvious from our decision in that case that:

(1) ''Primary use'' means primacy in utility or essentiality; and

(2) The ''primary use'' test is applicable to fungible goods as well as to machinery.

Those decisions control the instant case. In applying this test, it is our determination that the *primary use* of fungible goods is not outside the excepted status. We are in agreement with the decision of the Board of Tax Appeals, finding that Merrell's objective in purchasing fungible raw materials and packaging items is to manufacture products for sale. No specific part of these raw materials, when purchased or stored, is ever earmarked or segregated for manufacture into sample products. After Merrell's products are manufactured, it sells 92 percent of them, and later distributes a minor portion (8 percent), as samples throughout the United States and abroad.

The judgment of the Board of Tax Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, CORRIGAN, STERN and LEACH, JJ., concur.