68

THE UNITED STATES SHOE CORP., APPELLEE AND CROSS-APPELLANT, *v.* KOSYDAR, TAX COMMR., APPELLANT AND CROSS-APPELLEE.

JOYCE, INC., APPELLEE AND CROSS-APPELLANT, *v.* KOSYDAR, TAX COMMR., APPELLANT AND CROSS-APPELLEE.

VAISEY-BRISTOL SHOE CO., INC., APPELLEE AND CROSS-APPELLANT, *v.* KOSYDAR, TAX COMMR., APPELLANT AND CROSS-APPELLEE.

(Nos. 74-83, 74-84 and 74-85—Decided February 5, 1975.)

*Messrs. Frost & Jacobs, Mr. Dennis J. Barron* and *Mr Robert W. Carroll,* for appellees and cross-appellants.

*Mr. William J. Brown,* attorney general, and *Mrs. Maryann B. Gall,* for appellant and cross-appellee.

HERBERT, J. The first issue presented herein involves the taxpayers' contention that materials used to make sample shoes, shells and lasts needed for test-size shoes, and finished shoes and handbags purchased from other manufacturers are excepted from sales taxes under R. C. 5739.01 (E) (1) and (2). (The Vaisey-Bristol case does not, however, contain the question of samples.)

In enacting R. C. 5739.01.(E), the General Assembly intended that a sales tax, in most cases, be levied only on the final sale of tangible personal property. To implement this purpose, the General Assembly provided that:

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"(1) To resell the thing transferred in the form in which the same is, or is to be, received by him;

"(2) To incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manufacturing * * * or to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing * * *."

There exists in the case at bar, as well as in other decisions involving this section, the problem of determining the "purpose of the consumer" when the retail sale is made. Taxpayers contend that use of the samples to sell

other shoes is only secondary to their main purpose, that of producing the sample shoes for sales to retailers.

This court, in construing R. C. 5739.01, enunciated the "primary use test" in order to determine how the exception should be applied to purchases of tangible personal property used for both excepted and nonexcepted purposes. *Mead Corp.* v. *Glander* (1950), 153 Ohio St. 539, 93 N. E. 2d 19; *Ace Steel Baling* v. *Porterfield* (1969), 19 Ohio St. 2d 137, 249 N. E. 2d 892. Thus, as was stated in *Weigand* v. *Bowers* (1960), 171 Ohio St. 78, 79, 167 N. E. 2d 772: "The primary use to which the purchased property is put is determinative. An incidental use otherwise will not destroy the status." However, taxpayers contend that this test is not applicable to claims for exception under the first part of R. C. 5739.01(E)(2), "the incorporation exception." They also assert that the rule is only utilized in cases where concurrent uses are involved, whereas the instant case involves consecutive uses. We disagree. In *Richardson-Merrell* v. *Porterfield* (1972), 32 Ohio St. 2d 281, 291 N. E. 2d 528, the test was applied in a case wherein a taxpayer claimed exception under the "incorporation section." Also, in *Jim White Chevrolet Co.* v. *Porterfield* (1970), 22 Ohio St. 2d 79, 258 N. E. 2d 113, the criterion was employed in a situation where consecutive uses were present. Thus, under R. C. 5739.01(E), application of the primary use test is proper in all cases where the "purpose" of the taxpayer is unclear because dual uses exist.

In regard to the sample shoes, taxpayers claim that their benefit as a promotional aid was incidental to their main purpose, that of being manufactured for sale to retailers. However, the factual pattern presented to us compels a different conclusion. The purchase of raw materials which were incorporated into the samples for advertising was credited to accounts separate from those which contained materials for taxpayers' regular line of shoes. The samples were retained by salesmen for up to four months, and then were returned in a shopworn condition, causing them to be sold at a lower price than the standard shoes. At

times they were so ragged that they had to be discarded. Furthermore, the samples amounted to only five to seven percent of taxpayers' production run, and they were the entire means of promoting the remaining 93 to 95 percent of its product. Taken together, this is persuasive evidence that taxpayers' primary use (and therefore the purpose) of the samples was for advertising, and not as inventory for sale.

In *Jim White Chevrolet* v. *Porterfield, supra* (22 Ohio St. 2d 79), taxpayer purchased automobiles that were "assigned to other persons for the purpose of exposure to the public." The cars were later sold, but at a price below that which would have been charged if they were new. In denying an exception under R. C. 5739.01(E), the court found the primary use to be for advertising. It is our conclusion therefore, that the Board of Tax Appeals erred in determining that the samples were excepted from taxation. We also find that the test-size shoes and finished handbags and shoes were used mainly to stimulate design ideas, to experiment with new materials, or to try new stitching techniques. Therefore, these items are not excepted from taxation by R. C. 5739.01(E), and that part of the Board of Tax Appeals' decision is reversed.

The second issue presented is whether taxpayers' purchases from advertising agencies are excepted from sales taxes under R. C. 5739.01(B), which provides, in part:

" 'Sale' and 'selling' include all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred * * *. Other than as provided in this section, 'sale' and 'selling' do not include professional, insurance, or personal service transactions which involve the transfer of tangible personal property as an inconsequential element, for which no separate charges are made."

Taxpayers assert that they contracted for the personal services of the agencies, and the items they received were inconsequential elements of the transaction, thus allowing them an exception under the above section. Para-

graph one of the syllabus in *Koch* v. *Kosydar* (1972), 32 Ohio St. 2d 74, 290 N. E. 2d 847, defines personal service as "an act done personally by an individual; it is, in effect, an economic service involving either the intellectual or manual personal effort of an individual, *and is not the saleable product of his skill.*" (Emphasis added.) Thus, if the real object sought by the buyer is property produced by the service, and not the service *per se,* we must deny the exception. Paragraph two of the syllabus in *Accountant's Computer Services* v. *Kosydar* (1973), 35 Ohio St. 2d 120, 298 N. E. 2d 519. In the instant case, the Board of Tax Appeals found that taxpayers' main concern was to acquire possession of the films, commercials, radio tapes, brochures, photographs and annual reports. We agree with that determination. Taxpayers paid the agencies a substantial consideration for their services, and it is unlikely this would have occurred without receipt of the above items. It was their intention to acquire materials to use in advertising, and the personal property purchased was the "real object" sought by the buyers. Furthermore, the main function of the agencies was not to *analyze, interpret,* and *present* information to the companies. See *Accountant's Computer Services* v. *Kosydar, supra* (35 Ohio St. 2d 120), at pages 133 and 134. Therefore, that part of the decision of the Board of Tax Appeals which imposed sales and use taxes on the advertising expenses is affirmed.

*Decision reversed in part and affirmed in part.*

O'NEILL, C. J., STERN, CELEBREZZE and W. BROWN, JJ., concur.

CORRIGAN and P. BROWN, JJ., dissent.

PAUL W. BROWN, J., dissenting. The decision of the Board of Tax Appeals, excepting from taxation the materials incorporated into sample shoes, and the dies, lasts, and other items used to produce those shoes, is neither unreasonable nor unlawful. Taxpayers' position that their pur-

pose at the time of purchasing the materials was to incorporate them into shoes for sale by manufacturing is uncontradicted.

It is true that the initial use of the shoes in question was as sample products. However, at the time of purchase, and at all times thereafter, the taxpayers' purpose was to incorporate the materials into shoes which were manufactured for sale, and which were in fact sold. This activity falls within the plain, literal, statutory language of R. C. 5739.01(E) (2), for which an exception is provided.

R. C. 5739.01(E) (2) provides an exception from taxation if the purpose of the consumer is to incorporate the purchased material or component parts into tangible personal property to be produced for sale by manufacturing. The statute also provides an exception where the taxpayers' purpose is "to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing." The majority distorts this clear statutory language by judicially injecting the word "primary" into this exception, as a modification of the word "purpose." But whether a duality of purpose exists is totally irrelevant, so long as the required statutory purpose—the production of tangible personal property for sale by manufacturing—exists at the time of purchase. Herein, that purpose continued without abatement, providing a sound factual basis for the board's decision.

The "primary use" test, relied upon by the majority today, is solely a judicial creation, developed neither in the context of the "incorporation exception," nor in relation to the use or disposition of the sole product produced with incorporated materials. Rather, the test was developed in the limited context of determining whether one of the "direct use" exceptions (also contained within R. C. 5739.-01 (E) (2)), was applicable to purchases of specific items of tangible personal property.

*Mead Corp.* v *Glander* (1950), 153 Ohio St. 539, and *Weigand* v. *Bowers* (1960), 171 Ohio St. 78, cited by the majority, involved the purchase of equipment capable of

concurrent or dual uses. One such use was excepted from taxation, being for direct use in the manufacture of products for sale, or for the rendition of a public utility service, while the other was a nontaxable use. In determining whether such pieces of equipment were excepted from taxation, the court declared in its opinion at page 543, " 'it is the primary, as distinguished from an incidental use of the property that determines the question whether it is exempt from taxation.' "

The dichotomy is seen more clearly in *Ace Steel Baling* v. *Porterfield* (1969), 19 Ohio St. 2d 137. In that case, a railway crane was used in two ways—to process scrap steel, and to unload certain raw materials. The former use was clearly excepted from taxation; the latter was clearly taxable. In finding the crane excepted from taxation, the court, at page 141, declared that " 'primary use' is not merely the quotient of the time that a device is utilized in a taxable, *vis-a-vis* a nontaxable, activity. 'Primary use' connotes primacy in utility or essentiality, in quality as well as quantity. The value of the tool to the product is as important as the time the tool is engaged in fashioning the product."

In determining whether a transaction is excepted from taxation, the court looks to the primary use of the "thing transferred *as a material or a part*" of the ultimate product. R. C. 5739.01(E)(2). If the primary use of the "thing transferred" is in the manufacture of a product which is to be sold, the item is excepted from taxation. If the primary use is not in the manufacture of a product to be sold, and is not otherwise excepted, the item is not excepted from taxation.

In the present case, the *only* use of the things transferred—the raw materials, the dies, the lasts, the other items—was with regard to the manufacture of an item to be sold. This, under the explicit language of R. C. 5739.01 (E) (2), is sufficient to except the items from taxation.

Such an analysis is reflected in this court's decision in *Richardson-Merrill* v. *Porterfield* (1972), 32 Ohio St. 2d

281, a case dealing directly with the "incorporation" language of R. C. 5739.01(E) (2). The syllabus paragraph in that case stated: "In determining whether a manufacturer's purchases of raw materials and packaging items are excepted from sales and use taxes, the primary use which the manufacturer makes of such materials and items is the controlling factor."

In *Richardson-Merrill*, the court's inquiry was confined to the issue of whether the primary use of the raw materials and packaging items was in the manufacture of products which were to be sold. In the present case, the *only* use of the materials, dies, lasts, etc., was in the manufacture of products which were to be sold. In *Richardson-Merrill*, the court determined that 92 percent of the raw materials and packaging items were used in the manufacture of products which were to be sold. In the present case, 100 percent of the things transferred—the materials, the dies, the lasts, etc.—were used in the manufacture of products which were to be sold.

The majority finally cites *Jim White Chevrolet Co.* v. *Porterfield* (1970), 22 Ohio St. 2d 79, reliance upon which is inappropriate. In that case, a taxpayer purchased certain automobiles to be used and sold as demonstrators. This court's decision did not concern the "incorporation" exception at all, but rather R. C. 5739.01(E)(1), which excepts sales where the consumer's purpose is "to resell the thing transferred in the form in which the same is, or is to be, received by him," and that portion of R. C. 5739.01 (E) (2) which permits an exception where an item is used "directly in making retail sales." The *Jim White* decision is inapplicable in making a proper interpretation and determination of a fact situation falling under the "incorporation" exception.

"Ohio levies a sales tax on 'each retail sale made within this state.' All 'sales' * * * are considered 'retail sales' unless the purpose of the consumer in making the purchase is one of those specified in R. C. 5739.01(E)." *Jim White* at 80. One such purpose is the purchase of items

or materials to be incorporated into tangible personal property which is to be sold, or to use or consume the purchased items or materials in the production of tangible personal property which is to be sold. Taxpayers' activities herein fall clearly within such exception, a result the majority improperly denies.

In the present case, taxpayers also purchased finished shoes and handbags, which had been manufactured by others, gave the items an interim use not excepted from taxation, and then sold them. The uncontradicted testimony was that a company policy existed at the time of purchase, and was followed, requiring that these items be resold in the form in which they were received. Such activity falls within the clear, statutory language of R. C. 5739.01 (E)(1), for which an exception from taxation is provided.

With regard to the taxability of advertising services, most of these services appear to be clearly separable and not such mixed transactions as to be affected by this court's decision in *Accountant's Computer Services* v. *Kosydar* (1973), 35 Ohio St. 2d 120.

The discussion in the majority opinion of the personal service exception is confusing. One must note that the Board of Tax Appeals continues to interpret the 1959 amendment to R. C. 5739.01(B) (128 Ohio Laws 421, 423, the printed materials amendment) as imposing a tax upon the entire consideration for transactions in which such printed materials are transferred, unless the services admixed are personal services as defined in *Koch* v. *Kosydar* (1972), 32 Ohio St. 2d 74.

This rationale results, in many cases, in the imposition of a tax upon services which traditionally have been regarded as not taxable. The sales tax scheme, since its inception in 1935, has contemplated the imposition of a tax only upon transfers of tangible personal property. Numerous attempts to legislatively extend the scope of the tax scheme to cover service transactions have been rejected by the General Assembly.

Strictly speaking, the exception has been misnamed,

for it is not a personal service exception at all. Services have never been taxed. The exception merely makes it unnecessary to compute the tax where an inconsequential transfer of tangible personal property accompanies a service transaction.

The definition of an exception cannot result in the imposition of a tax not intended by the tax scheme, nor specifically authorized by statutory language. The General Assembly did not intend to convert individualized service transactions into taxable "sales" by enacting the "printed material" amendment of 1959. Radical legislative change in basic tax policy does not come in disguise. As this court pointed out in *Canton Malleable Iron Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 163, 176, had the General Assembly intended to make such a sweeping change in tax policy, it would not "* * * have done so in such an inconspicuous manner."

This record would make it difficult for me to decide with any degree of accuracy whether the tax imposed upon advertising services was in fact lawful. Therefore, I would remand this aspect of the Board of Tax Appeals' determination for a re-examination of its evidentiary basis, and for a revision of its rationale.

CORRIGAN, J., concurs in the foregoing dissenting opinion.