34

EMERY INDUSTRIES, INC., APPELLANT, *v.* KOSYDAR, TAX COMMR., APPELLEE.
EMERY INDUSTRIES, INC., APPELLEE, *v.* KOSYDAR, TAX COMMR., APPELLANT.

(Nos. 74-938 and 74-942—Decided July 2, 1975.)

*Messrs. Taft, Stettinius & Hollister, Mr. Stephen M. Nechemias* and *Mr. James J. Ryan,* for Emery Industries.
*Mr. William J. Brown,* attorney general, *Mr. John C. Duffy, Jr.* and *Ms. J. Elaine Bialczak,* for the Tax Commissioner.

*Per Curiam.* In case No. 74-938, Emery's argument is premised, first, on the exception from the sales tax found in R. C. 5739.01(E), which, in pertinent part, provides:

" (E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:
"* * *

" (2) To incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manufacturing, assembling, processing, or refining, or to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing * * *."

Emery then argues that the taxability of a particular purchased items depends upon the "primary use" of the item.

The Tax Commissioner concedes that approximately 87 percent of Emery's fuel consumption is directly used 'u production, but argues that the "primary use" test should not be used in this case because the uses of fuel ran be allocated as to use so that the tax assessed can be based on the allocation. In addition, he argues that the use of the fuel to produce steam for the nonexcepted uses is an important rather than an incidental use.

However, once the Tax Commissioner has conceded that the bulk of the fuel use is covered by the exception found in R. C. 5739.01(E), and he does not question the exception of 87 percent of the fuel, the "primary use" test is applicable. In *United States Shoe Corp.* v. *Kosydar* (1975), 41 Ohio St. 2d 68, 71, this court provided that:

"* * * Thus, under R. C. 5739.01(E), application of the primary use test is proper in all cases where the 'purpose' of the taxpayer is unclear because dual uses exist."

In *United States Shoe,* the court denied an exception for raw materials used in constructing sample shoes because the raw materials were earmarked when the purchase of those raw materials "* * * was credited into accounts separate from those which contained materials for taxpayers' regular line of shoes." 41 Ohio St. 2d 68, 71.

Emery argues that it buys fuel in bulk, all of which is consumed in the production of steam, which is then put to various uses. Emery believes the facts of this case distinguish it from *United States Shoe,* and that *Richardson-Merrell* v. *Porterfield* (1972), 32 Ohio St. 2d 281, controls.

We agree. In *Richardson-Merrell,* the Tax Commissioner assessed sales tax on a calculated portion of Merrell's purchases of raw materials. Since Merrell distributed about 8 percent of its drug products as samples without cost, the Tax Commissioner felt that a portion of the purchased raw materials was taxable since they were not incorporated into products for sale. This court disagreed, applying the "principal and primary use test first announced in *Mead Corp.* v. *Glander* (1950), 153 Ohio St. 539.*

In deciding *Richardson-Merrell,* the court, at page 285, stated:

"It is quite obvious from our decision in that case [*Ace Steel Baling* v. *Porterfield* (1969), 19 Ohio St. 2d 137 —another primary use case] that:

"(1) 'Primary use' means primary in utility or essentiality; and

"(2) The 'primary use' test is applicable to fungible goods as well as to machinery."

In this case, Emery purchased the fuel (fungible goods) with the primary objective of using the fuel to produce steam for direct use in its production of products for sale. None of the fuel is ever earmarked for nonexcepted

---

*The Tax Commissioner relies upon *Merchants Cold Storage Co.* v. *Glander* (1948), 150 Ohio St. 524. There, the court, two years before *Mead Corp.* v. *Glander,* suggested that, with proper records, taxability of fuel might be allocated as to use. However, after 25 years of the "primary use" test, that dictum seems insufficient authority upon which to base this case.

uses, and the approximately 13 percent nonproductive use of the resulting steam is merely incidental to the primary use, so that the total purchases of fuel are excepted from taxation.

In case No. 74-942, the Board of Tax Appeals reversed the Tax Commissioner's assessment of sales and use taxes on barrel-filling equipment and cut-off scales because they were excepted by R. C. 5739.02(B) (15) as "* * * machinery, equipment, and material for use in packaging tangible personal property for sale * * *."

The Tax Commissioner argues that the board's decision is not supported by any probative evidence of record.

The court has examined the record before the Board of Tax Appeals, and determines that there was probative evidence in the record to support the board's decision sufficient to satisfy the limitations of *Citizens Financial Corp.* v. *Porterfield* (1971), 25 Ohio St. 2d 53.

For the foregoing reasons, in case No. 74-942, the decision of the Board of Tax Appeals is affirmed in part, and, in case No. 74-938, the decision of the board is reversed in part.

*Decision affirmed in part and reversed in part.*

O'NEILL, C. J., HERBERT, STERN, CELEBREZZE and W. BROWN, JJ., concur.

CORRIGAN and P. BROWN, JJ., dissent.

PAUL W. BROWN, J., dissenting in part. In my opinion, R. C. 5739.01(E) is dispositive of the issues in case No. 74-938. It requires a tax to be paid on that part of the coal with respect to which the purpose of the consumer *at the time of the sale* was not "to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing." The quoted portion of the statute makes the purpose at the time of sale dispositive of the question of taxability. The admitted purpose of the taxpayer herein at the time of the sale was to use part of the

coal for the excepted purpose of producing steam to run productive manufacturing machinery, and to use part of the coal for the nonexcepted purpose of heating its building. Not only was this the taxpayer's purpose at the time of the sale, but that was its actual use of the coal thereafter. Additionally, the taxpayer monitored its coal use in a sophisticated way, so that excellent records of the amount of coal used for each purpose were available and used by the Tax Commissioner in making the assessment. One claiming that a purchase is excepted from sales taxation must assert and prove the applicability of the exception to its particular transaction.

*Merchants Cold Storage Co.* v. *Glander* (1948), 150 Ohio St. 524, which the Tax Commissioner argues is dispositive of this case, states that where the purpose of the taxpayer at the time of purchase is to use part of the purchase for a tax-excepted purpose, and part for a taxable purpose, and the taxpayer has failed to introduce evidence by which taxable and nontaxable purchases could be separated in a satisfactory manner, an assessment of the total purchases as taxable will not be disturbed. To so hold is to also hold that clear evidence permitting separation in a satisfactory manner authorizes a tax only upon the nonexcepted portion.

The so-called primary-use test can have no applicability in such a case. The statute does not say that where the purpose at the time of purchase is mixed, *i. e.*, excepted and nonexcepted purposes, the consumer may fail to separate and thereafter rely upon his primary use of the items for tax exception thereafter. But this is the effect of the holding of the majority opinion, which cites *United States Shoe Corp.* v. *Kosydar* (1975), 41 Ohio St. 2d 68, and *Richardson-Merrell* v. *Porterfield* (1972), 32 Ohio St. 2d 281, as its authority.

It must be admitted that there are generalizations in each of those cases which so hold. In *Richardson*, the syllabus states:

"In determining whether a manufacturer's purchases

of raw materials and packaging items are excepted from sales and use taxes [under 5739.01 (E) ], the primary use which the manufacturer makes of such materials and items is the controlling factor."

Although one can agree with the judgment in *Richardson*, the syllabus is so apparently erroneous that it should be overruled. The real holding of the case, in light of the court's statement in the body of the opinion that it is in agreement with a finding of the Board of Tax Appeals that "* * * Merrell's objective [purpose] in purchasing fungible raw materials and packaging items is to manufacture products for sale," is that evidence of an incidental use of fungible goods for a nonexcepted purpose, *after the date of the sale,* is not, standing alone, destructive of the exception, nor does such evidence impose upon the taxpayer the necessity of presenting evidence by which the materials used for taxable and tax excepted purposes can be separated. *Merchants Cold Storage Co.* v. *Glander, supra* (150 Ohio St. 524).

To say this is also not to say, as was stated in *United. States Shoe Corp.* v. *Kosydar* (41 Ohio St. 2d 71), that in determining whether a manufacturer's purchases of raw materials and other items are excepted from sales taxes by R. C. 5739.01(E), the primary use which the purchaser makes of such materials and items is the controlling factor. That this statement is not true is demonstrated by the fact that the statutory exception turns upon *purpose at the time of sale,* and by the fact that if it were true, Emery Industries could by this principle clearly avoid a tax required by the statute to be paid under the admitted facts of case No. 74-938.

The decision of the Board of Tax Appeals should be affirmed, and the syllabus in *Richardson-Merrell* v. *Porterfield, supra* (32 Ohio St. 2d 281), overruled.

CORRIGAN, J., concurs in the foregoing dissenting opinion.