148

CITIZENS FINANCIAL CORP., APPELLANT, *v.* KOSYDAR, TAX COMMR., APPELLEE.

(No. 74-1076—Decided July 16, 1975.)

*Messrs. Gingher & Christensen* and *Mr. Ray G. Brown,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. John C. Duffy, Jr.,* for appellee.

*Per Curiam.* Taxpayer's contention with respect to the off-line computerization method is that the "printout" received by the customer is an inconsequential element of a personal service transaction for which no separate charge is made, and is therefore excepted from the sales tax under R. C. 5739.01(B). Taxpayer contends also that the use of its equipment by customers in connection with the on-line method does not constitute a license for such use, but is a part of its programming and related personal service, and such use is an inconsequential element for which no separate charge is made and is excepted from sales tax under R. C. 5739.01(B).

OFF-LINE METHOD.

*Accountant's Computer Services* v. *Kosydar* (1973), 35 Ohio St. 2d 120, provides the criteria for determining whether a sale of tangible personal property is excepted from taxation under the last sentence of R. C. 5739.01(B). Such sentence reads, in pertinent part: " 'Sale' and 'selling' do not include professional, insurance, or personal

service transactions which involve the transfer of tangible personal property as an inconsequential element, for which no separate charges are made." There is no question here that a consequential service was rendered.

Paragraph one of the syllabus in *Accountant's* recites, in part: "If a consequential service is rendered, then it must be ascertained whether the transfer of the tangible personal property was an inconsequential element of the transaction." Paragraph two of the syllabus then leads us to the more specific determination which is necessary for ascertaining whether in a mixed transaction (including both personal service and transfer of tangible personal property), as here, the transfer of tangible personal property is an inconsequential element of the transaction. The test recited in *Accountant's* is whether "* * * the real object sought by the buyer [is] the service *per se* or the property produced by the service." As stated in the syllabus, a distinction must be made as to the *"true object* of the transaction contract."

The board concluded that the real object sought by the taxpayer's customers was the property produced, *i. e.,* "hard copy print-outs." There was no claim by taxpayer of being consulted with respect to analysis or problem solving. As noted by the board: "* * *Appellant did sort, classify and arrange the data to conform to the needs of its clients, but it did not advise the clients regarding what direction the clients should take in formulating their approach to the business world." The board correctly resolved the factual determination on the basis of the test set forth in *Accountant's,* and such resolution is supported by the record.

ON-LINE METHOD.

Of relevance here is the first sentence of R. C. 5739.01 (B), which reads, in pertinent part, that "sale" shall include all transactions where "* * * a license to use or consume tangible personal property is or is to be granted * * * for a consideration in any manner * * *." Taxpayer argues, as in the off-line method, that the use of its equip-

ment by its customers is inconsequential as relates to its computer system and programming thereof, and constitutes a personal service transaction under the last sentence of R. C. 5739.01(B) which grants exception for "* * * personal service transactions which involve the transfer of tangible personal property as an inconsequential element, for which no separate charges are made."

The board's decision, supported by the record, reflects mechanized transactions initiated by the customers subsequent to original programming by appellant, so that "[t]he overall service was not substantially made by the persons rendering the service, and a personal service transaction did not occur * * *." The board cites *Koch* v. *Kosydar* (1972), 32 Ohio St. 2d 74, as to the criteria to be used in determining whether a personal service transaction exists. Further, the record supports the decision of the board in applying the test in *Accountant's, supra,* "that the use of appellant's computer system is the real reason for and the true object of the transaction contracts between appellant and its clients."

The decision of the Board of Tax Appeals is neither unreasonable nor unlawful, and is, therefore, affirmed.

*Decision affirmed.*

O'Neill, C. J., Herbert, Corrigan, Stern and Celebrezze, JJ., concur.

W. Brown and P. Brown, JJ., dissent.

Paul W. Brown, J., dissenting. The board's decision in the instant case is both unreasonable and unlawful, and is neither supported by any evidence nor by the board's own finding.

The "personal service exception" contained in R. C. 5739.01(B) excepts from sales taxation any inconsequential transfer of tangible personal property incidental to a personal service transaction. As I indicated in my dissent in *United States Shoe Corp.* v. *Kosydar* (1975), 41 Ohio St. 2d

68, this exception must be seriously distorted before it can be construed to impose a tax upon a service transaction.

A transaction which consists of full service data processing of customer furnished information by the use of a computer program is a service transaction not subject to sales tax under the Ohio sales and use tax laws. Although the incidental delivery to the customer of a printed write-out of the data processing result of such a service, for which no separate charge is made, is a transfer of tangible personal property, its presence does not make the *service transaction* taxable. That the service contract is performed by persons rather than machines is of interest, in my view, only to the extent that it bears upon determination as to whether the service performed is personal in nature, thus excepting from taxation the incidental transfer of tangible personal property.

Where the service is "personalized," that is, where the charges are for processing customer furnished information (sales data, payroll data), other states having sales tax statutes similar to Ohio's refer to the contractor as a "service bureau," and in clarifying tax regulations, either except the entire transaction from taxation or outline methods of computing *only* the taxable value of the incidental transfers of tangible personal property. In so doing, they generalize at the outset of each such regulation that charges for processing are *not taxable*, as opposed to stating that they are exempt.

One need not discuss exemption (or exception) where the tax does not apply.

Particularly noteworthy is Regulation 1502 of the Board of Equalization of the Department of Business Taxes of the state of California, which thoroughly and rationally regulates all automatic data processing service and equipment transactions in that state. That regulation provides answers to most of the problems involved in separating the service portion of such contracts from the property transfer portion, when taxable, and outlines methods of determining the value of the taxable portion.

The California regulation is contained in its entirety at pages 4-9 of appendix 2-3.2d of 1 Bigelow, Computer Law Service (1975), State Sales and Use Taxes. That appendix also lists the attitudes of other state tax departments with reference to this problem. There, one finds the following tax department positions, state by state:

*Connecticut*

"Where a service bureau enters into a contract for the processing of customer-furnished information, by the use of a computer program or through an electrical accounting machine programmed by a wired plug-board, and the output is in part or in whole transferred to the customer in tabulated listing or similar human readable form, the true object of the contract is considered to be the rendition of a service, even though some tangible personal property is incidentally transferred to the client. Such contracts usually provide that the service bureau will receive the customer's source documents, record data in machine readable form, such as in punched cards or on magnetic tape, make necessary corrections, process the information, and then provide tabulated listings or record output onto other similar media (including payroll check forms or cards or W-2 forms or tax returns). * * *" *Id.*, at page 16.

*Louisiana*

"The furnishing for a monthly fee [of] computer printed accounting and accounts receivable and payable reports is a service of a type not subject to Louisiana sales tax." *Id.*, at page 36.

*New York*

"Services offered by computer operators, which consist of '* * * services of collecting, compiling or analyzing information of any kind or nature and furnishing reports thereof to other persons, but excluding the furnishing of information which is personal or individual in nature * * *' are taxable * * *." *Id.*, at page 49.

*Texas*

"Processing of data, performing of accounting services and evaluation of information when the information is sup-

plied by the customer, or gathered for the customer, are services which are not taxed under the sales & use tax." *Id.*, at page 64.

*Virginia*

"Service bureaus in general provide tabulated listings developed from the customer's source material and payroll checks and W-2 forms from payroll records. This is considered a nontaxable service even though some tangible personal property of an inconsequential nature is transferred to the customer." *Id.*, at page 74.

*Washington*

Sales of "custom" programs do not constitute " 'sales at retail' but * * * are simply the tangible evidence of a professional service rendered." *Id.*, at page 76.

*Wisconsin*

"Processing a client's data. Generally speaking, if a person enters into a contract to process a client's data by the use of a computer program, or through an electrical accounting machine programmed by a wired plugboard, the contracts are non-taxable (except if the contract is in the nature of a lease * * *). Such contracts usually provide that the person will receive the client's source documents, record data in machine readable form, such as in punch cards or on magnetic tape, make necessary corrections, rearrange or create new information as the result of the processing and then provide tabulated listings or record output on other media. This service will be considered nontaxable even if the total charge is broken down into specific charges for each step. The furnishing of computer programs and data by the client for processing under direction and control of the person providing the service is nontaxable even though charges may be based on computer time. The true object of these contracts is considered to be a service, even though some tangible personal property is incidentally transferred to the client." *Id.*, at page 80.

With regard to Champion's on-line activities for its savings and loan clients, I see no valid basis for holding that such activities constitute a *license to use* Champion's

computer, taxable under any part of the sales tax law. This is because Champion did not make such a transfer of possession or use of its computers to its clients or their personnel as is necessary in order to make the transaction taxable under clear statutory language.

I would hold the board's decision both unreasonable and unlawful. The consequences of the majority opinion and the confusion demonstrated by the court in its approach to this problem are regrettable.

W. Brown, J., concurs in foregoing dissenting opinion.