JANESVILLE DATA CENTER, INC., Petitioner-Appellant, v.
DEPARTMENT OF REVENUE, Respondent.

*No. 75–825. Argued March 6, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 656.)

For appellant there was a brief and oral argument by *Gilbert D. Sedor* of Janesville.

For respondent the cause was argued by *E. Weston Wood,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

SHIRLEY S. ABRAHAMSON, J. Janesville Data Center, Inc. (hereafter Data Center) seeks a determination that the Wisconsin Tax Appeals Commission erred in holding that the gross receipts derived by Data Center from sales of keypunched cards, magnetic tapes and computer printouts are subject to sales taxation under the provisions of sec. 77.52, Stats. The circuit court affirmed the order and decision of the Wisconsin Tax Appeals Commission. We reverse.

Data Center is a Wisconsin corporation engaged in the business of transferring to keypunch cards and magnetic tapes data furnished by its customers which its customers wish to use in computers. Data Center translates its customers' data into codes which a computer can read, by punching holes in a particular order on keypunch cards or by inserting magnetic bits in a particular arrangement on magnetic tapes. The processed cards and and tapes are delivered to the customers to be ultimately read by a computer. The information on the cards and tapes is retained in the "memory" of the customers' computers. After the customers have recorded the information, the tapes but not the cards may be returned to Data Center for reuse.

Data Center purchases keypunch cards from a supplier at a cost of $1.06 per one thousand cards and, during the period at issue here, it paid a sales tax to the supplier. The cost of the cards is included in Data Cen-

ter's gross charge to its customers. About 5 percent of the customers supply their own cards, and in these cases Data Center does not impose a charge for the cost of the cards.

More than half of the customers whose information is transferred to keypunch cards request Data Center to check the cards to be sure that the data was correctly transcribed. Data Center verifies the cards by repeating the keypunch transcribing operation. Approximately five percent of the cards require correction. On about 10 percent of Data Center's jobs, Data Center supplies a computer print-out of the information on the keypunch cards or on the magnetic tapes. In no aspects of its operation, however, does Data Center study, analyze, alter or adjust the customer's data.

Data Center's gross receipts are taxable under sec. 77.52, Stats. if they are derived from the sale, lease or rental at retail of tangible personal property[1] or if they are derived from the sale, performance or furnishing at retail of certain specified services.[2]

---

[1] Sec. 77.52(1), Stats., provides:

"77.52 Imposition of retail sales tax. (1) For the privilege of selling, leasing or renting tangible personal property, including accessories, components, attachments, parts, supplies and materials, at retail a tax is hereby imposed upon all retailers at the rate of 3 percent of the gross receipts from the sale, lease or rental of tangible personal property, including accessories, components, attachments, parts, supplies and materials, sold, leased or rented at retail in this state on or after February 1, 1962; but beginning on September 1, 1969 the rate of the tax hereby imposed shall be 4 percent."

[2] Sec. 77.52(2), Stats., provides:

"(2) For the privilege of selling, performing or furnishing the services herein described at retail in this state to consumers or users, a tax is hereby levied and imposed upon all persons selling, performing, or furnishing such services at the rate of 3 percent of the gross receipts from the sale, performance, or furnishing of such services on or after February 1, 1962; but beginning on September 1, 1969 the rate of the tax hereby imposed shall be 4 percent."

Sec. 77.51(4) (h), Stats., defines "sale" for purposes of sale of tangible personal property[3] as follows:

"(4) 'Sale,' 'sale, lease or rental,' 'retail sale,' 'sale at retail,' or equivalent terms include any one or all of the following: the transfer of the ownership of, title to, possession of, or enjoyment of tangible personal property or services for use or consumption but not for resale as tangible personal property or services and includes:

" . . .

"(h) A transfer for a consideration of the title or possession of tangible personal property which has been produced, fabricated or printed to the special order of the customer or of any publication."

Sec. 77.52(2) (a), Stats., sets forth the limited types of services upon which sales tax is imposed. Relevant here is sec. 77.52(2) (a) 11, Stats., which provides:

"(a) The tax imposed herein applies to the following types of services:

" . . .

"11. The producing, fabricating, processing, printing or imprinting of tangible personal property for a consideration for consumers who furnish directly or indirectly the materials used in the producing, fabricating, processing, printing or imprinting."

The tax laws are written to encompass a great variety of businesses and transactions. The statutory language must be given content case by case and business by business by the agencies administering the tax laws and the courts interpreting the tax laws. We must look at the statutory language as well as at the design and purposes of the statute.

Substantially similar language is used in sec. 77.51 (4) (h), and in sec. 77.52(2) (a) 11. Sec. 77.51(4) (h)

---

[3] Section 77.51(5), Stats., broadly defines "tangible personal property" to mean "all tangible personal property of every kind and description."

includes in the definition of "sale" the transfer for consideration of tangible personal property "produced, fabricated or printed to the special order of the customer"; sec. 77.52(2)(a)11 includes in the definition of "service" the "producing, fabricating, processing, printing or imprinting of tangible personal property for customers who furnish directly or indirectly the material used." In both definitions a tangible personal property is the end result, and the property is produced, fabricated, or printed for the customer. The extension of the retail sales tax to the fabricating or processing services encompassed by sec. 77.52(2)(a)11 serves to prevent taxpayers from avoiding the tax on sales of tangible personal property by structuring the transaction as one involving the rendition of services. It is nonetheless necessary that the transactions in question involve tangible personal property if they are to be taxed.

Courts have had great difficulty in distinguishing dealings in tangibles from dealings in intangibles. The thin line between the taxable furnishing of tangible personal property and the nontaxable furnishing of an intangible is difficult to draw, partly because there tends to be little assistance from the sales and use tax statutes or from economic theory.[4] Ambiguity and doubt, however, must be resolved in favor of the taxpayer, for as we said in *Dept. of Revenue v. Milwaukee Refining Corp.*, 80 Wis.2d 44, 48, 257 N.W.2d 855 (1977), "a tax

___

[4] *See, e.g.,* Davis, *The Purposive Approach to the Interpretation of Sales Tax Statutes,* 27 Ohio St. L.J. 429, 453–454 (1966); Hellerstein, *The Scope of the Taxable Sale Under Sales & Use Tax Acts: Sales As Distinguished from Services,* 11 Tax L. Rev. 261, 272 (1956); Due, *The Nature and Structure of Sales Taxation,* 9 Vand. L. Rev. 123 (1955); Due, *Retail Sales Taxation in Theory & Practice,* 3 Nat'l Tax J. 314 (1950); Due, *Sales Taxation* (1957); Due, *State Sales Tax Administration* (1963); Morgan, *Retail Sales Tax* (1964); Hellerstein, *State & Local Taxation, Cases & Materials* 423–438 (3d ed. 1969).

cannot be imposed without clear and express language for that purpose."

Clearly, tangible property, that is cards, tapes, or print-outs, were transferred in the case at bar. However, embodied in the cards, tapes, and print-outs is the essence of the transaction between Data Center and its customers: the purchase of coded or processed data, an intangible.

We are persuaded by the reasoning of the Supreme Court of Texas in *Bullock v. Statistical Tabulating Corporation*, 549 S.W.2d 166 (Tex. 1977).[5] The Texas court, asked to construe statutory language similar to ours, held that a keypunch operation was not taxable because the object of the transaction was the sale of intangible coded information, not the sale of tangible personal property. The court said:

> "We agreed with the Plaintiff's contention that the true object of this transaction is not the data processing card as contended by the Comptroller, but the purchase of *coded* or *processed data*, an intangible.
> ". . .
> ". . . The essence of the transaction for the customer is an intangible product, coded data, and Plaintiff's capabilities in making the translation or coding. The coded data could be transmitted from the Plaintiff's key punch machine to customer's computer in several forms, i.e., tapes and telephones, as well as cards.
> ". . .
> "In the transaction before this Court, Plaintiff's customers . . . are desirous of something beyond the tan-

---

[5] Compare *Commerce Union Bank v. Tidwell*, 538 S.W.2d 405 (Tenn. 1976); *Accountant's Computer Service, Inc. v. Kosydar*, 35 Ohio St.2d 120, 298 N.E.2d 519 (1973); *Citizens Financial Corp. v. Kosydar*, 43 Ohio St.2d 148, 331 N.E.2d 435 (1975); *Miami Citizens National Bank v. Lindley*, 50 Ohio St.2d 249, 364 N.E.2d 25 (1977); *Credit Bureau of Miami County v. Collins*, 50 Ohio St.2d 270, 364 N.E.2d 27 (1977).

gible object involved in the transaction. In this case, the object of the Plaintiff's customers is to obtain a great deal more than the key punch cards. . . . While this transaction is closer to just printing alone than the transaction in [other cases], the element of *service* here is still the 'essence of the transaction.'

". . .

"In determining the 'object of the transaction,' many factors are relevant. We have attempted to follow the design and purposes of the statute. The issue must be answered on a case by case basis. Although tangible personal property, i.e., cards, does change hands, the receipt of the cards does not constitute the essence of the transaction, the basic purpose of the customer in entering into the transaction." 549 S.W.2d 166, 168, 169.

Because Data Center's gross receipts were not derived from the transfer of tangible personal property, described in sec. 77.51(4)(h), Stats., or the furnishing of services, described in sec. 77.52(2)(a)11, Stats., they are not taxable under the provisions of sec. 77.52, Stats.

*By the Court.*—Judgment reversed and cause remanded with directions to the circuit court to enter judgment reversing the order and decision of the Wisconsin Tax Appeals Commission.