DRESSER INDUSTRIES, INC., APPELLEE, *v.* LINDLEY, TAX COMMR., APPELLANT.

[Cite as Dresser Industries, Inc. *v.* Lindley (1984), 12 Ohio St. 3d 68.]

(No. 83-1395—Decided July 11, 1984.)

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Robert E. Leach* and *Mr. Raymond D. Anderson,* for appellee.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. James C. Sauer,* for appellant.

*Per Curiam.* The issue presented for review is whether Jeffrey's acquisition of property from its subcontractors is exempt from taxation under R.C. 5739.01(E)(1). The Board of Tax Appeals held that such property is tax exempt. For the reasons set forth below, we affirm.

R.C. 5739.01 states in part as follows:

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"(1) To resell the thing transferred * * * in the form in which the same is, or is to be, received by him * * *."

In construing the applicability of an exemption under R.C. 5739.01(E)(1) where the purchaser has put the property to more than one use, this court has consistently held that the purchaser's primary use of the property must control the determination as to the property's taxability. *Fliteways* v. *Lindley* (1981), 65 Ohio St. 2d 21, 25 [19 O.O.3d 219]; *United States Shoe Corp.* v. *Kosydar* (1975), 41 Ohio St. 2d 68, 71 [70 O.O.2d 159]; *Jim White Chevrolet Co.* v. *Porterfield* (1970), 22 Ohio St. 2d 79, 82 [51 O.O.2d 104]. It is the primary use of the property which is determinative and an otherwise incidental use will not destroy the exempt status. *United States Shoe Corp., supra; A. J. Weigand, Inc.* v. *Bowers* (1960), 171 Ohio St. 78, 79 [12 O.O.2d 90].

In the present case, the appellant-commissioner argues that the items acquired by Jeffrey pursuant to the subcontracts were for research and development of the explosion-proof electrical enclosure and miner-bolter projects. The commissioner contends that the primary purpose of the items was not resale, but rather for use to develop the projects. Since the property was ultimately transferred to the United States government as part of the projects, the commissioner argues that the Board of Tax Appeals erroneously used an "ultimate use" test rather than a "primary use" test.

In *Fliteways, supra,* this court examined the propriety of a sales and use tax assessment levied against a taxpayer who purchased airplanes for resale, but also utilized the aircraft in its charter service and flight training school prior to resale. In determining the applicability of the exemption under R.C. 5739.01(E)(1), we concluded that the record supported a finding that the taxpayer's primary purpose when purchasing the aircraft was to resell them. Thus, even though the taxpayer used the aircraft in its charter service and flight training school to help defray the cost of carrying the aircraft in inventory, the airplanes remained for sale and their interim use was considered incidental.

The rationale utilized in *Fliteways, supra,* is applicable to the case *sub judice.* Jeffrey's primary purpose in obtaining the items under the subcon-

tracts was to resell them as an integral part of a finished product. It is true that the property in question was used in the design process of the projects, however, the design of each project was merely incidental to the finished product.

In addition, the terms of the contracts between Jeffrey and the United States government support our conclusion. Pursuant to the agreements, the title to the tangible personal property which was created automatically vested in the government. Therefore, Jeffrey had to resell the property obtained in the subcontracts to fulfill its contractual obligation to the United States.

Accordingly, we hold that Jeffrey's acquisition of property from its subcontractors is exempt from taxation under R.C. 5739.01(E)(1). The decision of the board being neither unreasonable nor unlawful is affirmed.

*Decision affirmed.*

SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.

CELEBREZZE, C.J., W. BROWN and HOFFMAN, JJ., dissent.

HOFFMAN, J., of the Fifth Appellate District, sitting for J.P. CELEBREZZE, J.

WILLIAM B. BROWN, J., dissenting. Because I conclude that the Board of Tax Appeals decision in this case was unreasonable and unlawful, I respectfully dissent. Under the facts of the present case, it is my view that Dresser's primary purpose in acquiring the property in question was to complete its research and development in order to fulfill its contractual obligations with the government and not to resell that property.

The majority opinion sets forth the appropriate test to be employed. The primary use or purpose test is applicable in all cases where the taxpayer's purpose is unclear because dual uses exist. *United States Shoe Corp.* v. *Kosydar* (1975), 41 Ohio St. 2d 68 [70 O.O.2d 159]; *A.J. Weigand, Inc.* v. *Bowers* (1960), 171 Ohio St. 78 [12 O.O.2d 90]. However, the majority applies this test without sufficient examination of the facts.

In *Fliteways* v. *Lindley* (1981), 65 Ohio St. 2d 21 [19 O.O.3d 219], relied upon by the Board of Tax Appeals and by the majority, the taxpayer purchased airplanes for resale but used them in charter service and flight-training school prior to resale. The basis of the decision allowing an exemption was the finding that the intervening use was merely for the purpose of defraying the costs of carrying the aircraft in inventory. This interim use was considered incidental because the aircraft remained for sale at all times.

The facts of *Fliteways* are not at all similar to those of the present case. In contrast, in *Jim White Chevrolet Co.* v. *Porterfield* (1970), 22 Ohio St. 2d 79 [51 O.O.2d 104], an exemption under R.C. 5739.01(E)(1) was denied for

new automobiles which were driven by the auto dealer's sales personnel prior to their resale to the public. The court found that the dealer's primary purpose in acquiring those cars was for use in advertising. Similarly, in *United States Shoe Corp., supra,* this court denied an exemption for various test-size shoes, as well as finished handbags and shoes which, though ultimately sold, "were used mainly to stimulate design ideas, to experiment with new materials, or to try new stitching techniques." *Id.* at 72.

Such was the case here. Dresser was contractually obligated to design and engineer an explosion-proof electrical enclosure and a miner-bolter system. Dresser was aided in its design and development by the furnishing of engineering plans and drawings, prototypes, equipment and an underground test-mine facility pursuant to its subcontracts. It is true that title to and possession of the personal property ultimately passed to the government. Nevertheless, the taxpayer's primary use of the property was in the fulfillment of its contractual obligations to design a finished product. In view of this fact, Dresser's use of the property cannot be termed merely "incidental."

The majority opinion implicitly concedes this point. There it is stated "the design of each project was merely incidental to the finished product." This is precisely the point. When one poses the question as to what the government truly desired from its contracts with Dresser the answer is simple. Did the government desire a finished product or did it simply wish to acquire the various pieces which might lead to that product? Obviously the former is correct. Put another way, Dresser was not serving merely as a wholesaler of the personal property it obtained from its subcontractors. Rather, its role was that of developer and manufacturer.

The fact that title to the personal property vested in the government by contract is of little importance. That clause is standard boilerplate language in a government contract and should not be allowed to control the determination of Dresser's primary purpose.

For the foregoing reasons, I conclude that Dresser's primary purpose in obtaining the items under the subcontracts was not to resell them. As such, I would find the Board of Tax Appeals decision to grant an exemption unreasonable and unlawful and would reverse.

CELEBREZZE, C.J., and HOFFMAN, J., concur in the foregoing dissenting opinion.