L. H. Horn et al., Appellants, v. Illinois Central
Railroad Company et al., Appellees.

Gen. No. 43,593.

Heard in the first division of this court for the first district at the October term, 1945.

Opinion filed January 7, 1946. Released for publication January 21, 1946.

IRVIN C. MOLLISON, of Chicago, for appellants.

DAVID & FAINMAN, of Chicago, for appellees; SIGMUND W. DAVID, of Chicago, of counsel.

MR. JUSTICE NIEMEYER delivered the opinion of the court:

Plaintiffs appeal from a judgment dismissing their amended complaint in an action for damages resulting from denial to them, because of race and color, of the free and equal accommodations, advantages, facilities and privileges of a restaurant or eating house possessed, owned, conducted, operated and controlled by defendants in, at and upon the station and premises of the defendant railroad company in Centralia, Marion County, Illinois. The appeal, taken to the Supreme Court, was transferred to this court.

The original complaint, consisting of one count, was based on the Civil Rights Act (Ill. Rev. Stat. 1945, ch. 38, pars. 125 to 128 [Jones Ill. Stats. Ann. 22.01–22.04]), which provides that any person who shall violate the Act "by denying to any citizen, except for reasons applicable alike to all citizens of every race and color, and regardless of color or race, the full enjoyment of any of the accommodations, advantages, facilities or privileges" enumerated in the Act, including those of restaurants, eating houses and railroads, "shall for every such offense, forfeit and pay a sum not less than $25 nor more than $500 to the person aggrieved thereby, to be recovered in any court of competent jurisdiction, in the county where said offense was committed . . . ."

Defendants having questioned, by motions to dismiss, plaintiffs' right to institute their action in the superior court of Cook county, plaintiffs filed an

amended complaint setting up the original complaint as count one, and adding three counts. The second count of the amended complaint alleged that the acts complained of in count one were violations of the Public Utilities Act. (Ill. Rev. Stat. 1945, ch. 111⅔, pars. 10, 38 and 77 [Jones Ill. Stats. Ann. 112.027, 112.057, 112.100].) Counts 3 and 4 were based upon an alleged common law liability of the defendants to furnish equal accommodations, etc., to all persons regardless of color or race in the restaurant of defendants, and are identical except for an addition of a paragraph in count 4 claiming exemplary damages. To this amended complaint defendants filed their several motions to dismiss the action, in which, as to count one, they again questioned plaintiffs' right to recover under the Civil Rights Act in a proceeding brought in the superior court of Cook county; as to counts 2, 3 and 4 they alleged failure to state a cause of action and interposed the defense of the statute of limitations. These motions were allowed and plaintiffs' cause dismissed. Thereafter plaintiffs moved to vacate the order of dismissal and for a rule on defendants to answer the amended complaint, and filed in support of the motion an affidavit of one of the plaintiffs setting out facts which would have been material on a motion for leave to file a second amended complaint, had such motion been made. The matters stated in the affidavit cannot be considered on the questions presented by this appeal. The sufficiency of the amended complaint must be determined by the allegations of the complaint, unaided by any affidavit of facts supporting and amplifying the allegations of the complaint. *Hart v. Tolman,* 1 Gilman 1; *Fish v. Farwell,* 160 Ill. 236, 253; *Dunlap v. Brotherhood of Railroad Trainmen,* 206 Ill. App. 209.

The Civil Rights Act, as applied to restaurants and eating houses, creates a cause of action unknown to the common law. 10 Am. Jur., Civil Rights,

sec. 17, page 910; *Brown v. J. H. Bell Co.*, 146 Iowa 89, 95, 96; *Grace v. Moseley*, 112 Ill. App. 100, 102. As to common carriers and innkeepers, it gives to the person aggrieved, if his action is brought in the county where the discrimination occurred, a remedy differing from the common law remedy in that the minimum and maximum damages to be recovered are fixed by the statute. The action created by the Civil Rights Act is, as plaintiffs contend, a transitory action the venue of which may be fixed by the legislature. *Mapes v. Hulcher*, 363 Ill. 227, 230, 231. In the statute the legislature fixed the venue of the civil action thereby created "in the county where said offense was committed," and although the Act was amended several times since its enactment in 1885, this provision has not been changed. The venue thus fixed is preserved by section 9, subparagraph 2 of the Civil Practice Act [Ill. Rev. Stat. 1945, ch., 110, par. 133, subpar. (2); Jones Ill. Stats. Ann. 104.009, subpar. (2)], which provides: "Any action which is made local by any statute shall be brought in the county designated in such statute." Plaintiffs, however, contend that defendant The Interstate Co., being a foreign corporation licensed to do business in this State and having a registered agent located in Cook county, had no lawful right to object to the jurisdiction of the superior court of Cook county. In *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U. S. 165, cited by plaintiffs, the court quotes from the opinion of Judge Cardozo in the case of *Bagdon v. Philadelphia & Reading Coal & Iron Co.*, 217 N. Y. 432, where he says that the designation of an agent by a foreign corporation for the service of process "deals with jurisdiction of the person. It does not enlarge or diminish jurisdiction of the subject-matter. It means that whenever jurisdiction of the subject-matter is present, service on the agent shall give jurisdiction of the person." It necessarily follows that where the court is without jurisdiction of the subject-

matter, service on the agent does not give jurisdiction of the person, and the defense that plaintiffs' action under the Civil Rights Act was instituted in the wrong county was available to The Interstate Co., as fully as to any other defendant.

Count 2 seeks recovery under the Public Utilities Act, section 10 of which, in so far as the same is applicable to the present case, defines the term ''public utility'' as meaning and including every corporation which ''May own, control, operate, or manage, within the State, directly or indirectly, for public use, any plant, equipment or property used or to be used for or in connection with the transportation of persons or property . . . .'' Transportation of persons includes ''any service in connection with the receipt, carriage and delivery of the person transported and his baggage, and all facilities, used or necessary to be used in connection with the safety, comfort and convenience of the person transported.'' The statute (section 8) recognizes that a public utility may be engaged in carrying on a business other than that of a public utility, which other business is not subject to the jurisdiction of the commission created by the statute except in so far as inquiry, examination and inspection by the commission may be necessary to enforce the provisions of the Act. There is no allegation in the amended complaint that either of the defendants at the time and place in question was a common carrier engaged in the transportation of persons. As to the defendant railroad company such allegation was unnecessary because judicial notice of the fact will be taken by the courts. *Lindelsee v. Chicago, O. & P. Ry. Co.*, 226 Ill. App. 20; 20 Am. Jur., Evidence, sec. 93. In count 2 it was alleged as a conclusion that defendants ''were at said place and time public utilities within the meaning of 'An Act concerning public utilities . . . .' '' It is nowhere alleged that the restaurant or eating house involved herein was ''used

or to be used for or in connection with the safety, comfort and convenience of the person transported'' or to be transported. On the contrary it is specifically alleged ''that said restaurant or eating house was managed, controlled, operated and conducted for the convenience, benefit and accommodation of the general public.'' There is no allegation that the plaintiffs were passengers or patrons of a railroad company engaged in the business of a common carrier or that they were on the premises of the defendant railroad company at the time with the intention of becoming such passengers or patrons, or that as such passengers or patrons, actual or intended, they entered the restaurant for the purpose of being served and were then denied such service, equal accommodations, facilities, etc., as were furnished and offered to other persons. In *Fred Harvey v. Corporation Commission of Oklahoma,* 102 Okla. 266, 229 Pac. 428, the court passed upon an order of the Corporation Commission ordering the Fred Harvey company to cease and discontinue in Oklahoma its order or regulation under which it refused to admit a gentleman patron to its dining rooms where meals *table d'hote* were served unless he wore a coat, thus requiring him, if he would dine coatless, to eat at Fred Harvey's lunch counter where only *a la carte* service was had and food was relatively higher priced than in the dining room; the Harvey company was operating a number of dining rooms and lunch counters in the stations of the Santa Fe railroad in Oklahoma; interstate passengers of the railroad constituted the greater portion of the patrons affected by the regulation of the restaurant company, which also served the general public, who while dining with it were not passengers of the railroad company or connected with its commerce. The court said: ''In so far as the order may affect patrons not connected with either interstate or intrastate commerce, neither the Interstate Commerce Commission nor the Corporation

Commission has jurisdiction to make it, unless it be made to affirmatively appear necessary for the benefit of such commerce."

Our courts have recognized the difference in the liability and rights of a railroad company in the conduct of its business as a common carrier or public utility and when engaged in transactions outside the scope of such business. In *Checkley v. Illinois Cent. R. Co.,* 257 Ill. 491, where the court was considering the provisions of a lease of a portion of the right of way of the railroad for a warehouse exempting the railroad company from liability for damages caused by fire by reason of the proximity of the premises leased to the railroad operated by the lessor and the movement or use of locomotive engines and cars on its tracks, the court said (p. 495) : "But the lease by appellee of a portion of its right of way for a warehouse does not relate to any of the duties imposed by the law upon appellee as a common carrier. The public is in no way concerned in this transaction, nor is it a matter of public interest whether the loss of the property destroyed by fire shall fall on one party rather than on the other. The situation is entirely different between the loss of this warehouse and its contents and the loss of goods entrusted to a carrier for transportation. In the latter case the public has an interest which is conserved by holding the carrier to a strict accountability for its negligence or that of its servants, and this for the plain reason that the public is compelled to employ the carrier to transport goods. Any member of the public is liable to require the services of a common carrier, and the carrier is under the legal duty of serving the public indiscriminately. Not so in regard to leasing a part of its right of way for a warehouse or an elevator. While the railroad company has the power to make such lease if it does not interfere with its duties to the public, it is in no sense required to do so. No one could compel a railroad

company, by *mandamus,* to lease its right of way for such purposes. It relates to a matter that is entirely within the discretion of the railroad company. In testing the validity of the lease under consideration, the circumstance that one party to it is a railroad corporation and engaged in the service of the public as common carrier is not of controlling importance. Indeed, it is difficult to see that it is of any importance whatever." This case was followed in *Bartee Tie Co. v. Jackson,* 281 Ill. 452. *State v. Baltimore & O. R. Co.,* 48 Md. 49, distinguished between hotels operated for the accommodation of passengers over its road and necessary to its business and other hotels used primarily as places of summer resort but not in any sense necessary to the operation of the road though they might attract travel over it. The former hotels were held to be exempt from taxation under the charter of the railroad company, but such exemption was denied as to the summer resort hotels.

In the absence of allegations showing the operation of the restaurant or eating house involved herein in connection with the transportation of persons or property by the defendant railroad, the restaurant or eating house is not within the Public Utilities Act, and no rights thereunder can accrue to the plaintiffs. It is therefore unnecessary to discuss other points relating to the Public Utilities Act raised by the parties.

What we have said above disposes of counts 3 and 4, which are based upon an alleged common law liability. There is no common law duty of a railroad operating a restaurant or eating house to serve all patrons without discrimination, unless such restaurant or eating house is operated for and conducted in connection with the accommodation and convenience of its passengers and patrons, actual or intended, and the person alleging discrimination is such passenger or patron. Each count of the amended complaint is based on the same transaction or occurrence alleged in the

original complaint, and the defense of the statute of limitations cannot be sustained. Civil Practice Act, section 46; *Metropolitan Trust Co. v. Bowman Dairy Co.*, 369 Ill. 222.

The trial court did not err in sustaining defendants' motions and dismissing plaintiffs' action, or in refusing to vacate the order of dismissal. The judgment is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.