JOHN MORRIS *et al.*, Plaintiffs-Appellants, *v.* ELRY FAULKNER Individually and as Sheriff of Johnson County, *et al.*, Defendants-Appellees.

Fifth District   No. 76-77

Opinion filed March 15, 1977.—Rehearing denied April 11, 1977.

Dennis J. Hogan, of Murphysboro, for appellants.

Charles R. Jelliffe, of Jelliffe & Ferrell, of Harrisburg, for appellee Elry Faulkner.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

The plaintiffs, John and George Morris, filed a complaint of false imprisonment in the circuit court of Johnson County against the defendants, Elry Faulkner, sheriff of Johnson County, Glen Trovillion and Nancy Morris. Following a dismissal of the complaint, plaintiffs filed an amended complaint in six counts. Pursuant to motions of defendants attacking the amended complaint, the trial court dismissed the amended complaint for failure to state a cause of action but with leave to file a second amended complaint. Plaintiffs elected to stand on their amended complaint and the trial court therefore entered judgment for defendants. From the judgment plaintiffs bring this appeal.

The amended complaint essentially alleges that on July 4 and July 7, 1975, John Morris, and on July 7, 1975, George Morris, were present as customers in Trovillion Tavern owned by Glen Trovillion; that Glen Trovillion had instructed his employee, Nancy Morris, a barmaid at the tavern, to consider plaintiffs as "barred" from entering the tavern as customers; and that on the dates specified Nancy Morris called the sheriff, Elry Faulkner, and asked him to cause plaintiffs to leave the tavern while making "false accusations" that plaintiffs would cause "trouble." It further alleges that pursuant thereto, the sheriff caused the plaintiffs to leave the tavern by "requesting and directing" them to do so; and that against their will the plaintiffs left the tavern "submitting to the aforesaid false imprisonment."

Although it is not entirely clear from the brief submitted by plaintiffs it appears that the sole issue presented for review is whether their amended complaint states a cause of action for false imprisonment.

■■ Pleadings are to be liberally construed with a view to doing substantial justice between the parties. (Ill. Rev. Stat. 1975, ch. 110, par.

33(3).) For the purposes of this appeal all well-pleaded facts will be treated as true together with all reasonable inferences to be drawn from those facts. *Pierce v. Board of Education*, 44 Ill. App. 3d 324, 358 N.E.2d 67.

On appeal, plaintiffs characterize the conduct of the sheriff as "shooing the people before [him] like peasants siezed and rousted because of unspecified 'trouble'." At issue is whether the sheriff's "requesting and directing" plaintiffs to leave the tavern on information by Trovillion's employee Morris that they would cause trouble, constitutes false imprisonment for which any of the defendants may be liable.

■■■ False imprisonment is the unlawful restraint of an individual's personal liberty or freedom of locomotion. (*Shelton v. Barry*, 328 Ill. App. 497, 66 N.E.2d 697.) Cases have stated that in order to constitute false imprisonment there must be some sort of unlawful detention, confinement or restraint of one's person although actual physical force is not required. (*Gore v. Marshall Field & Co.*, 184 Ill. App. 486; *Martin v. Lincoln Park West Corp.* (7th Cir. 1955), 219 F.2d 622.) Other cases have stated that false imprisonment consists of any unlawful exercise or show of force by which a person is compelled to remain where he does not wish to remain or to go where he does not wish to go (*McKendree v. Christy*, 29 Ill. App. 2d 195, 172 N.E.2d 380; *Lindquist v. Friedman's, Inc.*, 285 Ill. App. 71, 1 N.E.2d 529, *aff'd*, 366 Ill. 232, 8 N.E.2d 625; *Schramko v. Boston Store*, 243 Ill. App. 251), or is prevented from doing what he desires (*Hawk v. Ridgway*, 33 Ill. 473; *People v. Scalisi*, 324 Ill. 131, 154 N.E. 715).

In *Martin v. Lincoln Park West Corp.* (7th Cir. 1955), 219 F.2d 622, the plaintiff, an employee of the defendant hotel, received the use of a hotel room as part of his wages. Upon termination of his employment plaintiff was denied entrance to the hotel room which still contained his personal property. On appeal, at issue was whether plaintiff stated a claim on these facts, of false imprisonment. The court stated that false imprisonment consists of an "unlawful detention, confinement or restraint."

> "Inasmuch as plaintiff asserts no detention and no restraint, other than inability to enter the room which he had previously occupied, the right to enter which he had surrendered by his voluntary repudiation of his contractual obligations, we cannot, even though indulging in the greatest of liberality in construing the first count, sustain it as one entitling him to relief." (219 F.2d 622, 624.)

Thus in *Martin*, the plaintiff did not state a claim in false imprisonment since he had alleged no confinement. The court, however, implicitly recognized that had the plaintiff a right to enter the room, he would have stated a tortious violation of that right to use the room. Although false imprisonment is the unlawful restraint of an individual's personal liberty

or freedom of locomotion, an action in false imprisonment only specifically addresses itself to the interest of freedom from confinement. (See Restatement (Second) of Torts §36 (1965).) In the case at bar, plaintiffs do not allege a confinement or detention such as may be characterized as false imprisonment; it would be absurd to consider plaintiffs as having been confined to all the world but the tavern. But this does not mean that plaintiffs have not suffered a restraint or an interference in their personal liberty and freedom of locomotion which although not redressed by an action in false imprisonment is nonetheless worthy of protection. In discussing interferences which do not amount to an "imprisonment," Prosser states:

> "* * * it seems clear that too much emphasis has been placed upon the technical name of the tort; such interferences may invade a right which is entitled to protection, and an action may lie for them, though it is not that of false imprisonment. If there is any distinction, it is that false imprisonment, being derived from the action of trespass, may be maintained without proof of actual damage, while in such other actions, proof of some damage may be required." (Prosser, Torts §11, at 42 (4th ed. 1971).)

Consequently, we next consider whether plaintiffs' complaint is predicated on a right broader than their interest in freedom from confinement; one which is entitled to protection and for which an action may lie.

In *Cullen v. Dickenson* (1913), 33 S.D. 27, 144 N.W. 656, the plaintiff was denied entrance to a dance held at a dance hall where she was an invited and welcome guest, by the defendant police officers. The officers were acting pursuant to orders by the defendant commissioner of the city of Sioux Falls. She was taken to police headquarters where she was held for a period. Subsequently on other occasions she was again prevented from entering the dance hall. The court in addressing the plaintiff's exclusion from the dance hall stated:

> "The primary right involved in the matters alleged in the complaint is the liberty of the citizen—the right of freedom of locomotion—the right to come and go or stay, when or where one may choose. This is a right capable of being violated only by some unlawful act or conduct of another, which constitutes actual restraint, total or partial, upon the exercise of one's liberty. Such restraint can be accomplished only by some act or conduct equivalent to assault, actual or constructive. The wrongful assault may be such as to amount to a total deprivation of liberty, which was known at common law as false imprisonment, or it may consist only of a wrongful and forcible obstruction of the right of an individual to go in a particular direction, for which at common law

an action of trespass on the case, or assault if the person was so touched or threatened as to amount to an assault, would lie. In one case the restraint is complete, in the other partial. * * * If the acts were unlawful, they entitled the plaintiff to compensatory damages, and to punitive damages also if accomplished by malice, actual or constructive. The extent and character of the unlawful restraint would affect only the amount and kind of damages recoverable. A discussion of the common-law action for false imprisonment is therefore unnecessary, and could lead only to confusion of ideas, rather than to a clear perception of the principle involved. The right violated by this species of tort is freedom of locomotion. Any unlawful conduct or act imposing actual restraint completes the tort for which an action will lie." (33 S.D. 27, 31-32, 144 N.W. 656, 657-58.)

As in *Cullen*, the complaint in the case at bar is predicated upon the right of liberty, the freedom of locomotion, the right to come and go or stay, when or where one may choose. Such a right is fundamental and is entitled to the protection of the law so that an action will lie for an unlawful restraint thereof.

■■ However, the restraint complained of by plaintiffs had not arisen from any unlawful acts taken by defendants Trovillion or Morris. The complaint merely alleges that Trovillion's employee Morris called Sheriff Faulkner and made "false accusations" that plaintiffs would cause trouble. Thus at most, liability of Trovillion or Morris could only be based upon having conveyed information of an erroneous opinion to the proper authority. With this information, Faulkner was free to take whatever action, if any, he chose. Therefore his acts, whether lawful or unlawful, could not give rise to liability for Trovillion or Morris since they had not directed or procured those acts. *Odorizzi v. A. O. Smith Corp.* (7th Cir. 1971), 452 F.2d 229, and cases cited therein.

■■ We turn next to consider the lawfulness of the acts taken by Faulkner. In *Cullen* the police barred the plaintiff from entering a dance hall while here the sheriff "requested and directed" plaintiffs to leave the tavern. However, unlike *Cullen* where the plaintiff was an invited and welcome guest, in the instant case, plaintiffs were "barred" by the owner from entering the tavern. Plaintiffs impliedly presume that their right of liberty is superior to the property rights of the tavern owner. We find no authority supporting such a presumption. *City of Chicago v. Corney*, 13 Ill. App. 2d 396, 142 N.E.2d 160; *Horn v. Illinois Central R.R. Co.*, 327 Ill. App. 498, 64 N.E.2d 574.

Moreover, section 17 of "An Act to revise the law in relation to sheriffs" (Ill. Rev. Stat. 1975, ch. 125, par. 17) provides that:

"Each sheriff shall be conservator of the peace in his county, and

shall keep the same, suppress riots, routs, affrays, fighting, breaches of the peace, and prevent crime; and may arrest offenders on view, and cause them to be brought before the proper court for trial or examination."

Under the facts alleged in the complaint it can be reasonably inferred that Faulkner "requested and directed" plaintiffs to leave the tavern because he believed that there was a possibility that trouble might erupt therein. It is undisputed that plaintiffs had not suffered an arrest by the sheriff. (*People v. Colon,* 9 Ill. App. 3d 989, 293 N.E.2d 468.) In addition, it cannot go without notice that the incident took place in a tavern, a place the law recognizes as meriting special control to protect the health, safety and welfare of the public. (Ill. Rev. Stat. 1975, ch. 43, par. 94.) Under such circumstances we find that the sheriff's acts were well within the scope of his authority to keep the peace and were consequently lawful.

For the foregoing reasons we affirm the judgment of the circuit court of Johnson County.

Affirmed.

JONES and KARNS, JJ., concur.