ROBERT L. QUICK, by Michael L. Jones, his Guardian and Legal Representative, Plaintiff-Appellant and Cross-Appellee, v. JOANN HAMBURG QUICK, Defendant-Appellee and Cross-Appellant.

Fifth District   No. 5—90—0037

Opinion filed May 15, 1991.

Eric L. Terlizzi, of Pfaff, Garner & Terlizzi, of Salem, and Harold H. Pennock, Jr., of Hodson, Jones & Pennock, Ltd., of Centralia, for appellant.

Marvin G. Miller, of Crain, Cooksey & Veltman, Ltd., of Centralia, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Robert L. Quick, by and through his guardian and legal representative, Michael L. Jones, appeals from an order of the circuit court of Marion County dismissing plaintiff's complaint which sought an order declaring invalid the marriage between Robert L. Quick and defendant, Joann Hamburg Quick. Additionally, defendant has cross-appealed the order of the circuit court substituting the guardian as plaintiff's special administrator for purposes of pursuing this appeal. We reverse and remand.

When a case is on appeal from dismissal of a complaint, all well-pleaded facts must be taken as true. (*Ritzheimer v. Insurance Counselors, Inc.* (1988), 173 Ill. App. 3d 953, 955, 527 N.E.2d 1281, 1283; *Morris v. Faulkner* (1977), 46 Ill. App. 3d 625, 627, 361 N.E.2d 112, 113.) We, therefore, accept as true the facts alleged in plaintiff's complaint. Sometime before February 20, 1989, plaintiff developed lung cancer with brain metasteses, which resulted in plaintiff being in a coma or semi-coma from September 18, 1989, until his death on October 17, 1989. On September 2, 1989, a marriage ceremony was performed at plaintiff's residence between plaintiff and defendant. The instant action was initiated by Wilbert Quick, plaintiff's brother, and Joyce White, plaintiff's daughter. Both sought to have plaintiff declared a disabled adult and to have his marriage to defendant declared invalid. On September 26, 1989, Michael Jones was appointed temporary guardian of Robert Quick. On that same day, Jones filed a complaint on behalf of plaintiff to have the marriage declared invalid on the grounds that plaintiff lacked capacity to consent to the marriage and/or that he was induced by defendant through fraud or duress to enter the marriage. Defendant was served with a copy of the com-

plaint. Before an evidentiary hearing could be held, plaintiff died. On October 23, 1989, defendant filed her motion to dismiss due to plaintiff's death. Defendant's motion was granted on January 16, 1990. The circuit court also granted plaintiff's motion to substitute Michael L. Jones as special administrator of plaintiff's estate for the purpose of pursuing this appeal.

The issue plaintiff asks us to address is whether the circuit court erred in dismissing plaintiff's complaint to invalidate the marriage pursuant to section 302(b) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1989, ch. 40, par. 302(b)). While plaintiff agrees that the statute may be interpreted to require automatic dismissal of a pending action upon the death of either party, he, nevertheless, contends that such a narrow construction is contrary to the legislative intent and that the legislative scheme of sections 301 and 302 of the Act (Ill. Rev. Stat. 1989, ch. 40, pars. 301, 302) is unjust and is inequitable. We agree.

■ Section 301 of the Act requires a court to declare a marriage invalid if:

> "(1) a party lacked capacity to consent to the marriage at the time the marriage was solemnized, either because of mental incapacity or infirmity or because of the influence of alcohol, drugs or other incapacitating substances, or a party was induced to enter into a marriage by force or duress or by fraud involving the essentials of marriage." (Ill. Rev. Stat. 1989, ch. 40, par. 301(1).)

Section 302 of the Act states that an action to declare a marriage invalid for lack of capacity to consent must be filed no later than 90 days after the petitioner obtained knowledge of the described condition. The action may be brought by either party to the marriage or by the legal representative of the party who lacked capacity to consent. (Ill. Rev. Stat. 1989, ch. 40, par. 302(1).) In the instant case, plaintiff's guardian brought the action 24 days after the ceremony was performed, which is within the proper time frame dictated by the Act. However, the circuit court granted defendant's motion to dismiss because plaintiff had died before an evidentiary hearing could be held, and section 302(b) of the Act provides that "[i]n no event may a declaration of invalidity of marriage be sought after the death of either party to the marriage under subsection[] (1)." (Ill. Rev. Stat. 1989, ch. 40, par. 302(b).) In its order, the circuit court determined that whether the case could proceed depended on the meaning of the word "sought." The circuit court relied on Webster's definition of the word

"sought" and determined that the case could not be pursued after the death of a party. The circuit court stated:

> "Sought is the past tense of the word seek which is defined in Webster's Dictionary as follows: To try to get or acquire; to pursue.
>
> Therefore the statute provides that the case may not be pursued after the death of a party. While in this case, this ruling may result in an injustice, it is not within the Court's prerogative to rewrite the statutes.
>
> It is therefore ordered that the Motion to Dismiss is granted."

This is a case of first impression. We can find no cases which have interpreted section 302(b) under circumstances similar to the present case. Like the circuit court, we believe that the question that must be determined is what the General Assembly intended when it used the word "sought."

■■ ■ In construing statutes, the judicial role is to ascertain and to give effect to the intent of the General Assembly. The entire statute must be examined in order to find the legislative intent, not only in the plain language of the statute, but also in the objectives of the legislation and the evils it sought to remedy. (*Baksinski v. Corey* (1988), 173 Ill. App. 3d 1016, 1019, 529 N.E.2d 232, 234.) Courts consider the historical and practice notes to the annotated statutes helpful when ascertaining the legislative intent. (*Schutzenhofer v. Granite City Steel Co.* (1982), 93 Ill. 2d 208, 212, 443 N.E.2d 563, 565.) The consequences resulting from various constructions of an Act must be taken into consideration in construing the statute, and the court should select the construction which leads to a logical result and avoid the construction which the General Assembly could not have contemplated. *In re Marriage of Burke* (1989), 185 Ill. App. 3d 253, 258, 541 N.E.2d 245, 248-49.

Section 302 of the Act is derived from section 208 of the Uniform Marriage and Divorce Act. (Ill. Ann. Stat., ch. 40, par. 302, Historical and Practice Notes, at 89 (Smith-Hurd 1980).) A review of the comments to section 208 of the Uniform Marriage and Divorce Act is helpful in determining what the drafters had in mind when writing this section. The comments explain that "[s]ubsection (b) states a general policy against declarations of invalidity after the death of either party to the marriage." (9A U.L.A. §208, Comment, at 171 (1987).) The Comment goes on to explain:

> "The provisions of subsection (b), stating that no declaration of invalidity may be 'sought' after the death of either party is

intended to prohibit such a collateral attack upon the marriage, in lieu of a declaration, in all proceedings, including probate proceedings. Moreover, the use of the word 'sought' rather than 'commenced' implies that the death of a party to the marriage at any time before the entry of final judgment would terminate a proceeding attacking the marriage. The underlying policy reasons for this principle are clear: the traditional 'void marriage' doctrine often imposed unwise and unfair penalties on innocent 'spouses' in stable family situations long after the questioned marriage had occurred. The penalties serve no effective deterrent purpose, but cause severe economic dislocations; a spouse may be denied workmen's compensation and social security benefits, or even a share in a spouse's estate, after the marriage has been terminated by the death of the other spouse, despite the fact that the surviving spouse had no reason to suspect the invalidity of the marriage." (9A U.L.A. §208, Comment, at 172 (1987).)

The historical notes to the Smith-Hurd Annotated Statutes adopt the Uniform Marriage and Divorce Act Comments and clearly explain that the rationale for section 302(b) was to abolish the void marriage doctrine and thereby prohibit the invalidation of a long-standing marriage, which, if allowed, can cause a host of economic troubles for the surviving spouse who had long assumed that his or her marriage was valid and that he or she was entitled to the deceased spouse's death benefits. Apparently, our General Assembly and the drafters of the Uniform Marriage and Divorce Act did not contemplate a situation such as the one before us where the deceased spouse married only weeks before his death and where an action to invalidate the recent marriage was filed by his legal representative before his death, but an evidentiary hearing on the matter could not be held before the incompetent spouse died. In this situation, if defendant is in fact an "innocent spouse," she would not suffer the hardships noted by the drafters of the language of section 302(b), as she did not enjoy a long-standing marriage with plaintiff. If defendant is not an "innocent spouse," but is in fact guilty of securing her marriage to plaintiff through fraud or duress, she certainly does not need the protection of section 302(b); instead, plaintiff's family should be protected.

A reading of the circuit court's order in this matter shows that the court recognized the injustice which could occur by its dismissal of the complaint. We, too, recognize the injustice that would occur by dismissal of this action if the allegations made in plaintiff's complaint are true. Because we do not believe that the General As-

sembly contemplated this situation, and because we believe it is logical under the present circumstances to allow the invalidity action to survive the plaintiff's death, we construe the word "sought" to mean that if the invalidity action is initiated prior to the decedent's death, it will survive.

■■ The only other issue we are asked to consider is defendant's cross-appeal. Defendant contends that the circuit court erred when it substituted plaintiff's guardian, Michael L. Jones, as special administrator of plaintiff's estate for the purpose of pursuing this appeal. Defendant is correct that "[i]f letters of administration are issued to another on a petition filed, letters may not be issued to the person who was guardian." (Ill. Rev. Stat. 1989, ch. 110½, par. 24—19(b).) However, both the record and the briefs are void of any information concerning the previous issuance of letters to one other than Michael L. Jones. It is not the function of a reviewing court to read beyond the record and to engage in speculation. (*In re Marriage of Glessner* (1983), 119 Ill. App. 3d 306, 313, 456 N.E.2d 311, 316.) The burden rests on the appellant, in this instance the cross-appellant, to provide a sufficient record to support her claim of error, and in the absence of such a record, the reviewing court will presume that the circuit court's order was in conformity with established legal principles and had an adequate factual basis. (*Fischer v. Mann* (1987), 161 Ill. App. 3d 424, 425-26, 514 N.E.2d 566, 567.) Because we must concern ourselves only with the record before us, we find that the circuit court did not err by substituting plaintiff's guardian for purposes of this appeal.

For the foregoing reasons, the order of the circuit court of Marion County is reversed and the cause remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

RARICK, P.J., and WELCH, J., concur.