[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 468.]

AMERICAN CYANAMID COMPANY, APPELLANT, *v*. TRACY, TAX COMMR.,
APPELLEE.

[Cite as *Am. Cyanamid Co. v. Tracy*, 1996-Ohio-133.]

*Taxation—Free drug samples distributed to physicians in Ohio by New Jersey
drug company's field representatives—Use tax assessed, when—R.C.
5739.02(B)(18), applied.*

(No. 94-1869—Submitted November 8, 1995—Decided February 7, 1996.)

APPEAL from the Board of Tax Appeals, No. 92-G-1380.

————————————

{¶ 1} American Cyanamid Company ("Cyanamid"), through its Lederle
Laboratories Division in Wayne, New Jersey, is a manufacturer and distributor of
prescription pharmaceuticals.  The Tax Commissioner assessed a use tax against
Cyanamid for samples of prescription drugs which it manufactured outside Ohio
and sent to its field representatives for free distribution to Ohio physicians.  The
audit period for the assessment was January 1, 1987 through December 31, 1989.

{¶ 2} Cyanamid appealed the commissioner's assessment to the Board of
Tax Appeals ("BTA"), which affirmed the assessment.  The only witness presented
by Cyanamid at the hearing before the BTA was its manager of sales and use taxes,
Edward McMillian.  He testified that about eight percent of the total drugs
manufactured by Cyanamid were allocated for distribution as free drug samples.
The use tax assessment was based on the full absorption cost of the drugs involved,
which included the cost of material, labor, and all overhead.  McMillian estimated
that the cost of the materials was forty-one percent of the manufactured cost of the
drugs.

{¶ 3} This cause is before this court upon an appeal as of right.

————————————

*Baker & Hostetler, Edward J. Bernert* and *George H. Boerger*, for appellant.

*Betty D. Montgomery,* Attorney General, and *Janyce C. Katz,* Assistant Attorney General, for appellee.

_____

***Per Curiam.***

**{¶ 4}** R.C. 5741.02(A) levies an excise tax (use tax) upon the "storage, use, or other consumption in this state of tangible personal property ***."  "Use" is defined by R.C. 5741.01(C) to mean "the exercise of any right or power incidental to the ownership of the thing used."

**{¶ 5}** In *Woman's Internatl. Bowling Congress, Inc. v. Porterfield* (1971), 25 Ohio St.2d 271, 54 O.O.2d 383, 267 N.E.2d 781, a taxpayer received emblems and awards from out-of-state suppliers which it sorted and repackaged and mailed to various members.  We held that the taxpayer "used" the emblems and awards purchased by it.  Recently, in *Cent. Transport, Inc. v. Tracy* (1995), 72 Ohio St.3d 296, 649 N.E.2d 1210, we affirmed a use tax assessment against a taxpayer that purchased equipment for its own use from suppliers both inside and outside Ohio.  When the equipment was delivered and unloaded at the taxpayer's truck dock in Ohio, it was unwrapped, as necessary, inspected and moved to appropriate trucks to be delivered to locations outside Ohio.  We determined that the taxpayer's actions represented an exercise of rights of ownership in Ohio, and affirmed the assessment.

**{¶ 6}** Cyanamid's use of the drug samples in this case is analogous to those uses by the taxpayers described in the cases cited above.  Cyanamid shipped the drug samples to its field representatives in Ohio, who determined to which physicians they were to be distributed.  The receipt and distribution of the drug samples by Cyanamid's field representatives clearly represented an exercise of a right or power incidental to the ownership of the personal property.  Unless one of

the exemptions set forth in R.C. 5741.02(C) is applicable to the drug samples, the samples clearly are subject to the Ohio use tax.

**{¶ 7}** Cyanamid contends that "when the purchase or use of an item remains exempt from the Ohio sales tax, the use of that item is also exempt from the use tax." Cyanamid's contends that because the raw materials that were purchased to make the drug samples would have been exempted from taxation, under R.C. 5739.01(E)(2), if purchased in Ohio, the use of the finished product should also be exempt. We disagree.

**{¶ 8}** Cyanamid cites *Richardson-Merrell, Inc. v. Porterfield* (1972), 32 Ohio St.2d 281, 61 O.O.2d 501, 291 N.E.2d 528, in support of its contention. In *Richardson-Merrell* we exempted from sales and use taxes the purchase of raw materials that were used in manufacturing drug samples. Hoewever, we need not further review the *Richardson-Merrell* decision, because the tax status of the raw materials that went into the drug samples is not an issue in this case. We understand Cyanamid's argument to be that, if a manufacturer produced an item in Michigan and brought the product into Ohio for use by the manufacturer, then the product should not be subject to the use tax because the raw materials that went into the product would have been exempted if they had been purchased in Ohio.

**{¶ 9}** The commissioner has not attempted to assess the purchase of the raw materials that went into the drug samples; the commissioner's assessment was made against the use of the finished personal property after it was brought into Ohio.

**{¶ 10}** The Ohio use tax is imposed against the "consumer," which is defined in R.C. 5741.01(F) as "any person who has purchased tangible personal property *** for *** use *** in this state." Former R.C. 5741.01(D) defined "purchase" to mean "production, even though the article produced *** was used, stored, or consumed by the producer." By production and use of the drug samples, Cyanamid became the "consumer" of the finished personal property which it produced and brought into and used in Ohio.

**{¶ 11}** In the alternative, Cyanamid contends that the drug samples are exempted from the use tax by R.C. 5739.02(B)(18). This statute provides that the sales tax does not apply to "[s]ales of drugs dispensed by a registered pharmacist upon the order of a practitioner licensed to prescribe, dispense, and administer drugs to a human being in the course of his professional practice \*\*\*." This provision clearly sets forth three elements that must be present for the exemption to be applicable: first, there must be a *sale* of drugs; second, the drugs must be dispensed by a *registered pharmacist*; and third, the drugs must be dispensed upon the *order* of a licensed practitioner.

**{¶ 12}** However, the drug samples were transferred to the physicians, without consideration; therefore, there was no sale of the drug samples. *Kloepfer's, Inc. v. Peck* (1958), 158 Ohio St. 577, 49 O.O. 483, 110 N.E.2d 560. Furthermore, the drug samples were distributed by Cyanamid's field representatives, not by a registered pharmacist. Finally, the drug samples were distributed by the field representatives without any prescriptions or orders being written by the physicians who received the samples. Thus, none of the three elements required for the exemption contained in R.C. 5739.02 (B)(18) is present in this case.

**{¶ 13}** Although the facts of this case do not meet the requirements of R.C. 5739.02(B)(18), Cyanamid contends that the exemption is applicable to the drug samples because the language contained in R.C. 5739.02(B)(18) provides a status exemption for all prescription drugs. Cyanamid would have us exempt all prescription drugs from taxation, thereby disregarding the requirements set forth in R.C. 5739.02(B)(18).

**{¶ 14}** To accept Cyanamid's contention that prescription drugs should have a status exemption would require us to disregard the clear and specific requirements which the General Assembly has set forth in R.C. 5739.02(B)(18); we cannot do that. Exemptions or exceptions from taxation are to be strictly construed. *Natl. Tube Co. v. Glander* (1952), 157 Ohio St. 407, 47 O.O. 313, 105 N.E.2d 648.

When the General Assembly has spoken as clearly as it has in R.C. 5739.02(B)(18) regarding prescription drugs, there is no room for interpretation. In *Slingluff v. Weaver* (1902), 66 Ohio St. 621, 628, 64 N.E.2d 574, 576, we stated, "The question is not so much what did the legislature intend to enact, as what did it mean by what it did enact." In this case, the exemption for prescription drugs set forth in R.C. 5739.02(B)(18) clearly and specifically states what is required for the exemption to be applicable. If, as Cyanamid contends, the exemption is a status exemption for prescription drugs, the language of the statute does not express that intention. We do not find the exemption from taxation set forth in R.C. 5739.02(B)(18) applicable to Cyanamid's use of the drug samples.

{¶ 15} Cyanamid contends that, if the samples are taxed, the tax should be imposed only against the cost of the raw materials and packaging, and should not include the labor or overhead charges. The amount of the use tax to be imposed against a consumer is measured by the price (R.C. 5739.025). R.C. 5741.01(G)(1) defines "price," in pertinent part as follows: "If a consumer produces the tangible personal property used by him, the price is the produced cost of such tangible personal property."

{¶ 16} In this case, it is undisputed that the assessment was based on a "price" that included labor and overhead. The term "produced cost," contained within the definition of "price" in R.C. 5741.01(G)(1), was added in 1959. (128 Ohio Laws 421.) Prior to the 1959 amendment, the definition had provided that "[i]f a consumer produces the tangible personal property used by him, the price is the usual and ordinary consideration paid for such tangible personal property." (127 Ohio Laws 134.) By changing the term "usual and ordinary consideration" to "produced cost," the General Assembly eliminated any profit or markup that might have been included in the "usual and ordinary consideration." However, there is no indication that the General Assembly meant to limit "produced cost" to raw materials. We find that the term "produced cost" includes both labor and overhead.

{¶ 17} Accordingly, we affirm the decision of the Board of Tax Appeals as reasonable and lawful.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

WRIGHT and PFEIFER, JJ., dissent.

———————————

**PFEIFER, J., dissenting.**

{¶ 18} I would reverse.  If you sell it, we don't tax it; if you give it away, we do?

WRIGHT, J., concurs in the foregoing dissenting opinion.

———————————