[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 83.]

NDM ACQUISITION CORP., APPELLANT, *v.* TRACY, TAX COMMR., APPELLEE.

[Cite as *NDM Acquisition Corp. v. Tracy*, 1996-Ohio-49.]

*Taxation—Free samples of various disposable and reusable products for use in hospitals and elsewhere in the medical field—Price of free samples, against which use tax is assessed, includes not only the cost of the materials but also the internal labor and overhead costs.*

(No. 95-1804—Submitted April 4, 1996—Decided July 24, 1996.)

APPEAL from the Board of Tax Appeals, No. 94-K-394.

————————————

{¶ 1} During the audit period, November 1, 1989 through June 30, 1990, appellant, NDM Acquisition Corp. ("NDM"), manufactured various disposable and reusable products for use in hospitals and elsewhere in the medical field. In order to induce potential customers to switch from competitive products, NDM gave away certain products, such as cables for EKG machines. In this manner, potential customers were able to use NDM's disposable electrodes on a continuing basis.

{¶ 2} During the audit period, when NDM removed a free sample from inventory, it accrued and paid a use tax on the cost of the materials contained in the free sample. As a result of the audit performed by the Tax Commissioner, additional use tax was assessed against NDM based on the difference between the fully absorbed cost and the cost of the materials.

{¶ 3} Full absorption accounting includes in the cost of a product the cost of the materials, the cost of direct labor, and the indirect costs, such as taxes and depreciation and organizational costs related to manufacturing.

{¶ 4} The Board of Tax Appeals ("BTA") affirmed the commissioner's assessment.

{¶ 5} The cause is now before the court upon an appeal as of right.

———————————

*Baker & Hostetler, Edward J. Bernert* and *George H. Boerger*, for appellant.

*Betty D. Montgomery*, Attorney General, and *James C. Sauer*, Assistant Attorney General, for appellee.

———————————

***Per Curiam.***

**{¶ 6}** The primary issue raised by NDM is whether the price of the free samples, against which the use tax is assessed, includes only the cost of the materials or whether it also includes internal labor and overhead costs. R.C. 5741.01(G)(1) defines "price" as:

"'Price' * * * means the aggregate value in money of anything paid * * * by a consumer to a seller in the complete performance of the transaction * * * by which tangible personal property has been purchased * * * for * * * use * * * in this state, without any deduction or exclusion on account of the cost of the property sold, cost of materials used, labor or service cost * * * or any other expense. * * * If a consumer produces the tangible personal property used by him, the price is the *produced cost* of such tangible personal property. * * *" (Emphasis added.)

**{¶ 7}** In addition, R.C. 5741.01(D) defines "purchase" to include "production, even though the article produced * * * was used * * * by the producer."

**{¶ 8}** NDM contends that for the tangible personal property it produces and gives away, the term "produced cost" in R.C. 5741.01(G)(1) includes only the cost of the materials used. A similar contention was put forth recently by the taxpayer in *Am. Cyanamid Co. v. Tracy* (1996), 74 Ohio St.3d 468, 659 N.E.2d 1263. In *Am. Cyanamid,* the taxpayer-drug company distributed free samples of drugs it manufactured outside Ohio, to physicians in Ohio. American Cyanamid contended that the use tax should be imposed only upon the cost of the raw materials and

packaging used in the free samples. We disagreed, finding that "the term 'produced cost' includes both labor and overhead." *Id*. at 471, 659 N.E. 2d at 1266.

{¶ 9} In *Am. Cyanamid*, we stated that there was no indication that the General Assembly meant to limit "produced cost" to raw materials. *Id.* Therefore, based on the plain wording of R.C. 5741.01(G)(1) and our decision in *Am. Cyanamid,* we find that NDM was correctly assessed use tax upon the fully absorbed cost of the free samples.

{¶ 10} NDM also contends that as a result of a prior audit, it was misled as to the commissioner's policy on taxing free goods. During this prior audit the tax agent initially assessed the fully absorbed cost of the free samples. One of the NDM's employees wrote a letter to the tax agent stating that only the cost of the materials should be assessed. For reasons which do not appear in the record, the tax agent canceled the use tax assessed against the costs of the free samples other than the cost of the materials.

{¶ 11} In *Switzer v. Kosydar* (1973), 36 Ohio St.2d 65, 65 O.O.2d 215, 303 N.E.2d 860, the taxpayer had been advised by an agent of the Department of Taxation that he was not required to collect tax on his sales of fish to operators of pay lakes. In addition, the evidence in *Switzer* indicated that, until recently, the commissioner had not assessed the sales of other fish haulers operating like Switzer. We upheld the assessment against Switzer based upon *Recording Devices, Inc. v. Bowers* (1963), 174 Ohio St. 518, 23 O.O.2d 150, 190 N.E.2d 258, wherein we held in paragraph one of the syllabus, "Estoppel does not apply against the state of Ohio as to a taxing statute."

{¶ 12} In *Recording Devices* we did recognize an exception to the general rule concerning estoppel. The facts in *Recording Devices* showed that the taxpayer had received a letter from the Ohio Tax Commission's legal department stating that certain of the taxpayer's activities were not taxable.

**{¶ 13}** However, no similar fact pattern exists in this case. NDM has no letter or communication from the commissioner authorizing it to pay use tax on the free samples measured solely by the cost of the materials. NDM relies on the fact that it was able to convince a tax agent to cancel a portion of an assessment which he had made. The fact that a tax agent has been convinced not to assess a tax on a past audit does not immunize NDM from liability on future audits. *Beatrice Foods Co. v. Lindley* (1982), 70 Ohio St.2d 29, 24 O.O. 3d 68, 434 N.E.2d 727.

**{¶ 14}** Likewise NDM contends that the assessment represented a change in the commissioner's policy, and it had a right to rely on the commissioner's past actions. One of the bases for NDM's contention is found in the United States Supreme Court's opinion in *Halliburton Oil Well Cementing Co. v. Reily* (1963), 373 U.S. 64, 83 S.Ct. 1201, 10 L.Ed.2d 202, wherein it referred to a document described as Cir. No. 18, dated March 1, 1954. *Id*. at 75, 83 S.Ct. at 1207, 10 L.Ed.2d at 210, fn. 10. The court used the document as the basis for its assertion in a Louisiana use-tax case that Ohio excluded labor and shop overhead from the tax base for the out-of-state manufacturer-user. Circular No. 18, according to NDM, stated that it was the position of the department that the terminology "usual and ordinary consideration" which was used to measure "price" should be construed as the costs of raw materials to the producer. The "usual and ordinary consideration" language contained in former R.C. 5741.01(G) was replaced in 1959 by the term "produced cost." (128 Ohio Laws 436.) There is no evidence in this case concerning any facts about Cir. No. 18. There is no evidence in this case that could lead to a conclusion that Cir. No. 18 was still in effect during the audit period or that NDM knew about Cir. No. 18 and relied upon it. There was no evidence introduced by NDM to show that the commissioner had any rule or policy in effect during the audit period which stated that producers of free goods were to be assessed only on the cost of the materials.

**{¶ 15}** Further, NDM contends that the commissioner cannot tax the fully absorbed cost of free goods without issuing a formally promulgated rule. NDM contends that the commissioner has changed his policy on the taxation of free goods and must now promulgate a rule before he can tax the fully absorbed cost. There was no evidence that the commissioner had a policy of not taxing the fully absorbed cost. In addition, unless a statute provides otherwise, the commissioner does not need to issue a rule before he assesses a tax based on a statute. The terms of R.C. 5741.01(G)(1) clearly give the commissioner the statutory authority to assess a use tax measured by the "produced cost."

**{¶ 16}** Finally, we have reviewed *Internatl. Business Machines Corp. v. Charnes* (1979), 198 Colo. 374, 601 P.2d 622, relied upon by appellant. We find the case inapplicable. The language of the relevant Colorado use-tax statute is significantly different from that found in the Ohio use-tax statute and therefore is not useful in our analysis.

**{¶ 17}** Accordingly, we affirm the decision of the Board of Tax Appeals as reasonable and lawful.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

———————————